Argued February 13, affirmed April 23, 1970

## WALKER, *Appellant, v.* SHERRIFF, *Respondent.*

468 P2d 655

*Randolph Slocum,* Roseburg, argued the cause and filed the briefs for appellant.

*Edward M. Murphy,* Roseburg, argued the cause for respondent. With him on the brief were Stults, Jayne, Murphy & Anderson, Roseburg.

Before SCHWAB, Chief Judge, and LANGTRY and FOLEY, Judges.

FOLEY, J.

The principal question in this probate proceeding is whether an illegitimate child can claim benefits (setting apart exempt property for his nurture and education) from his father's estate absent a formal proceeding to legitimize the child, or other proceeding to establish paternity.

George Walker died on August 31, 1968. He and Edith Sherriff had lived together for many years but were never married, and apparently separated sometime prior to his death. A son, Jerry Walker, aged 12 at the time of his father's death, was born to them. It is undisputed by the parties hereto that Jerry Walker is the son of decedent, and it was stipulated in this proceeding that no filiation or other proceedings were ever instituted to establish the paternity of Jerry Walker.

On November 11, 1967, George Walker and Edith Sherriff entered into a contract under which she quitclaimed her undivided one-half interest in certain real property (the homestead involved herein) to him, and he agreed to pay to her $3,479.04 "in full settlement of the obligation of Walker to support his son Jerry, or of any other obligation existing between Walker and Sherriff." The full amount called for in the contract was paid by Walker prior to his death.

After Walker's death probate proceedings were commenced with Mary B. Walker, a daughter-in-law of decedent, as administratrix. "Jerry G. Walker, son, age 12 years," is listed as an heir in the petition for

administration. Thereafter Edith Sherriff, guardian of the person and estate of Jerry George Walker, petitioned to have the homestead and other exempt property set aside for "the nurture and education of said Jerry George Walker," to be thus expended by the guardian. This was in accordance with ORS 116.010, which reads as follows:

"Upon the filing of the inventory the court or judge thereof shall make an order setting apart for the widow, widower or minor children of the deceased, if any, all the property of the estate exempt from execution, according to exemption laws in effect as of date of death of deceased. The property thus set apart is the property of such widow or widower to be used or expended by her or him in the maintenance of herself or himself and minor children, if any. If there is no widow or widower, it is the property of the minor child; or if more than one child, then of the minor children in equal shares, to be used or expended in the nurture and education of such child or children by the guardian thereof, as the law directs."

The administratrix of George Walker's estate objected to setting aside the homestead and other exempt property, contending (1) that as a prerequisite thereto, paternity must be formally established under ORS 109.070 and (2) that the agreement of November 11, 1967, between the mother and father of Jerry Walker for support, having taken care of the child's support, foreclosed setting aside of the homestead, or alternatively, (3) that the payment to Mrs. Sherriff under the November 11, 1967, agreement was an advancement to Jerry Walker for which he must account. The circuit court issued a memorandum opinion noting that the administratrix had stipulated to the fact of paternity and concluded, therefore, that requiring establishment

of paternity by a judicial proceeding would be a useless act. The court also found that the November 11, 1967, agreement between Edith Sherriff and decedent did not in any way foreclose setting aside the homestead for the son Jerry and did not constitute an advancement to him. The circuit court then overruled the administratrix's objections, allowed the petition, and ordered the exempt property set aside to the guardian pursuant to ORS 116.010. The administratrix appeals.

Prior to 1957 an illegitimate child was the heir of its mother. ORS 111.220. In 1957 this section was repealed and the rights of illegitimate children were placed on the same basis as other children. Oregon Laws 1957, ch 411, § 1, codified as ORS 109.060, reads:

> "The legal status and legal relationships and the rights and obligations between a person and his descendants, and between a person and his parents, their descendants and kindred, are the same for all persons, whether or not the parents have been married."

The 1957 law then set forth methods of establishing paternity. Section 2, codified as ORS 109.070, reads:

> "The paternity of a person may be established as follows:
>
> "(1) The child of a wife cohabiting with her husband who is not impotent, shall be conclusively presumed to be the child of her husband, whether or not the marriage of the husband and wife may be void.
>
> "(2) A child born in wedlock, there being no decree of separation from bed or board, shall be presumed to be the child of the mother's husband, whether or not the marriage of the husband and wife may be void. This shall be a disputable presumption.

"(3) By the marriage of the parents of a child after his birth.

"(4) By filiation proceedings as provided in ORS 109.110 to &ast; &ast; &ast; [109.230].

"(5) By paternity being established or declared by other provision of law."

Section 3 of the 1957 Act, codified as ORS 111.231, reads:

"In applying the laws of descent and distribution of this state, full effect shall be given to all relationships as described in &ast; &ast; &ast; [ORS 109.060]. Before the relationship of father and child and other relationships dependent upon the establishment of paternity shall be given effect in determining inheritance rights, heirship must be established prior to the closing of the administration of the decedent's estate, or, if the decedent's estate is not administered in this or any other state, then within three years after the decedent's death. In the event that such heirship be established subsequent to proceedings for the sale of real property in the decedent's estate, the sale proceedings shall be valid, notwithstanding that citation was not issued to such heir."

Section 6 of the 1957 Act, codified as ORS 109.090 (2), provides:

"This Act shall be liberally construed, with the view of effectuating its objects, notwithstanding the rule of common law that statutes in derogation thereof are to be strictly construed."

■ As the circuit court pointed out in its opinion, the law does not require an unnecessary procedure or hearing where, as here, the fact of paternity has been stipulated and is not placed in issue. The circuit court correctly concluded that the stipulation of paternity and thus heirship obviated the necessity for any type

of formal procedure or proceeding to legitimize the child.

It might be argued that since the other heirs are not parties to this proceeding, the stipulation "that Jerry George Walker, age 13, was born as a result of this  *  *  *  union [of George W. Walker and Edith Sherriff]" is not binding on them. ORS 117.510 et seq. provides a determination of heirship procedure to be utilized by the court, if there is doubt or uncertainty as to who are heirs, and similarly to be utilized by an heir if he or she desires to request a determination of heirship; thus, should any of the other heirs want to question Jerry Walker's heirship, this avenue is available to them.

■ With reference to the other claims by the administratrix, that the support contract between Edith Sherriff and George Walker constituted a waiver by Jerry Walker of his statutory homestead rights or alternatively that the contract constitutes an "advancement" to him for which he must account, the circuit court found and we agree:

> "The Administratrix' contention relative to whether the agreement between the guardian and decedent is an advancement or a prenuptial agreement have not been disregarded. It suffices that guardian was not contracting for the ward. She was not guardian for purposes of contracting for an advancement; nor was the agreement a prenuptial agreement. Even if it was and even if the son benefitted from the agreement as a third party, he was not a party to it and would not be bound by it."

Affirmed.