[No. 18424. Department Two. November 18, 1924.]

*In the Matter of the Estate of* CHARLES H. ARLAND,
*Deceased.*

JOSEPHINE E. ARLAND *et al., Appellants,* v. GEORGE H.
ARLAND, *as Executor, et al., Respondents.*[1]

WILLS (8-1)—SPECIFIC PERFORMANCE (6-1, 25)—CONTRACTS TO DE-
VISE—RIGHTS OF THIRD PARTIES—EQUITY. A contract between hus-
band and wife to make wills leaving all their property to their chil-
dren will be enforced only when equity so demands; and specific
performance will not be granted where the husband, surviving for
ten years, died at the age of eighty years, leaving a second wife to
whom he had been married six years, and whose right to one-third
of the estate presents greater equities than those founded on heir-
ship.

Appeal from a judgment of the superior court for
Whitman county, Blake, J., entered September 5, 1923,
in favor of the plaintiff, in a will contest, after a trial
to the court upon an agreed statement of facts. Af-
firmed.

*Voorhees & Canfield,* for appellants.

*Neill & Sanger,* for respondents.

BRIDGES, J.—This is a very interesting suit in equity.
In December, 1911, Charles H. Arland and his wife,
Mary E. Arland, entered into a written agreement con-
cerning all their property which belonged to the com-
munity. By its terms each agreed to, and did, execute
to the other a warranty deed covering all of the prop-
erty, the contract providing that such deed should have
the effect of vesting in the survivor the entire title.
These deeds were to be, and were, put in escrow to
be held until the death of one of the parties, and then
the proper deed was to be delivered to the survivor.

[1]Reported in 230 Pac. 157.

It was further agreed that the survivor should immediately upon the death of the other party, make a will, giving whatever he or she had at his or her death to the children of the contracting parties. Mrs. Arland died within a year after the execution of this contract, and Mr. Arland at once obtained from the escrow holder the deed running from his deceased wife to himself. About four years thereafter he married again. He died about six years after his second marriage, leaving his wife, Josephine, surviving him. At the time of his death he was 79 or 80 years of age. There were no children resulting from the second marriage. He did not make the will contemplated by the contract between himself and his first wife, but did make one giving to his second wife a one-third interest in his estate, the remainder being given to his children (all by the first wife). The second wife had no knowledge of the contract or its terms until after the death of Mr. Arland. From the time of the death of his first wife until his second marriage and thereafter, he and his wife lived on the property in question. They did not add to the estate that was in existence at the time of the death of his first wife, but, on the contrary, a small portion of it was expended for their living. The foregoing facts are set out in a stipulation which provides that the question to be determined "is as to the right of the petitioner, Josephine E. Arland, to the portion of the estate of Charles H. Arland, deceased, bequeathed to her under his last will and testament. . . . ." The trial court upheld Mr. Arland's will, and the children have appealed.

This case rests entirely upon equitable principles. The court is free to do that which its conscience dictates. Contracts of the character of the one involved here will be enforced if equity so demands, but al-

though there may be equities supporting it, it will not be enforced if by so doing the rights of others will be invaded. The court may not, in its anxiety to relieve one party, inflict a wrong upon another who is entirely innocent. In other words, a contract to devise property is valid and enforcible unless superior equities have intervened. Equity will not enforce a contract where the result will be harsh and oppressive. These principles are supported by the following cases: *Johnson v. Hubbell,* 10 N. J. Eq. 332, 66 Am. Dec. 773; Alexander on Wills, § 97; *Rundell v. McDonald,* 41 Cal. App. 175, 182 Pac. 450, *Owens v. McNally,* 113 Cal. 444, 45 Pac. 710; 33 L. R. A. (N. S.) 369. In a general way we have recognized this rule in *Bernard v. Benson,* 58 Wash. 191, 108 Pac. 439, 137 Am. St. 1051, where we said:

"We think the true rule, and the one which best harmonizes with the broad principles of equity, is that specific performance will be denied when rights of innocent third parties have intervened so that the enforcement of the contract would be harsh, oppressive, or unjust to them."

While there are many equities in favor of the appellants, we think they are overcome by the greater equities of the respondent. She married Mr. Arland in entire ignorance of the contract between him and his deceased wife. She lived with him for six years and cared for him during his old age. In so doing she must have relieved the appellants of many duties which otherwise would have been imposed upon them. In a sense, her equities are based on an actual consideration, while theirs are based on the right of heirship. She obtains only one-third of the estate. The appellants obtain all that portion which formerly belonged to their mother and some in addition thereto. If the contract did not exist, no one would think of denying that an equitable division had been made. Under our

statute, § 1399, Rem. Comp. Stat. [P. C. § 10026], if
Mr. Arland had made the will provided for in the con-
tract it would have been avoided by his marriage to
the respondent. His widow is his heir as well as the
children, for the statute provides that in the event one
die intestate, leaving a wife and children, one-third
of his estate shall go to his wife. Section 1341, Rem.
Comp. Stat. [P. C. § 9847]. If the respondent.had been
an innocent purchaser for value of all the property in
question, and not the widow, courts of equity would
not for a moment think of enforcing the contract
against her. While in the ordinary sense she is not
a purchaser, in an equitable sense she is in as favor-
able a position as if she were such. It is quite true
that as between the appellants and their father, or as
between him.and his deceased wife, the contract would
unquestionably be enforced, but that situation would
not take into consideration the equities of the respond-
ent.

There are but few cases closely touching this ques-
tion. The one most nearly in point is *Owens v. McNal-
ly, supra*. There the facts were: McNally lived in Cali-
fornia, was unmarried, was more than fifty years of
age and had an estate of considerable value. He had
a niece about eighteen years of age who lived in Michi-
gan. He promised her that if she would come and live
with him he would, upon his death, leave her all of
his property. Relying on this oral agreement, she went
to California and lived with and cared for him for a
number of years, when he married, and at his death left
a will giving his property to his wife, who at all times
had been entirely ignorant of the contract between
McNally and his niece. The latter sued to enforce the
contract with her uncle. The court said:

"The defendant widow married McNally in igno-
rance of the contract, and, it appears, continued in ig-

norance of the contract until after his death. She acquired distinct rights of heirship and succession. There might have been children born of the marriage, with similar rights. It is true that these rights vested after the contract was made, but, where a bill is brought for specific performance of a contract, the after-acquired rights of third parties are equitable considerations to be regarded in adjudicating the questions.     .     .

. A specific performance of this contract cannot, therefore, be decreed without sweeping aside, as of no moment or avail, the rights of the wife and widow, vested under a contract most strongly favored by the law. Specific performance, as we have said, is not to be decreed under strict rule and formula. Every consideration which may properly be urged upon the court is to be weighed and passed upon, and it will be decreed only when no other adequate relief is available to plaintiff, and even then it will be denied if it operates by way of a hardship upon the innocent.''     .

The court concluded that the equities of the widow were superior to those of the niece.

Mr. Alexander, in his work on Wills, vol. 1, § 97, after saying that specific performance will not be granted to the injury of innocent persons, uses this language:

''Thus it might be inequitable to grant specific performance against the estate of a decedent who had agreed to will all of his property to another, the promisor having subsequently married and the wife having been in ignorance of the agreement. Equity will not enforce a contract where the result would be harsh or oppressive. And since the law prescribes that wills are revoked by marriage or by marriage and the birth of issue, it may be said that all parties to a contract to make a will must have done so with the statute in view.''

Appellants cite *Rundell v. McDonald, supra,* as laying down a contrary doctrine to that stated in *Owens v. McNally, supra,* by the same court. There the facts

were that the plaintiff owned some real estate which he deeded to his aunt without other consideration than her agreement to return it to him by devise at her death. Pursuant to this agreement, the aunt made a will giving the property to the plaintiff, and subsequently married and later died without having made any other will, leaving her husband surviving her. The court there held that, while the subsequent marriage of the aunt probably revoked the will, yet the equities were all in favor of the plaintiff and that the contract would be enforced. The chief ground upon which the court held for the plaintiff was that he, being the owner of the property, had, without consideration, deeded it to his aunt upon agreement that it should be returned to him at her death. It was claimed there that the *McNally* case, *supra,* was controlling, but the court said:

"We believe there are material points of distinction between the respective equities as shown in *Owens v. McNally* and all the other cases cited to the same point, and those apparent in the case at bar." *Rundell v. McDonald,* 41 Cal. App. 175, 182 Pac. 450.

The court then proceeds at length to set out the various differences and concludes that the equities were with the plaintiff.

The appellants also cite *Dillon v. Gray,* 87 Kan. 129. There the facts were that Andrew Gray and his wife lived on a farm owned by them. They procured one of their daughters and her husband to come and live with them and look after their needs, on the promise that, upon their death, they would leave the farm and everything they owned to them. Relying on this promise, they complied with the agreement. Some years afterwards, the farmer's wife having died, he remarried. He left a will by the terms of which he gave to three

of his sons all of the property except $25 to his second wife and $200 to another of his daughters. The suit was for specific performance of the contract. The court said:

"In the present case the contract was based upon an adequate consideration and has been fully executed on the part of the plaintiffs. No circumstances or conditions are shown which render it inequitable, and the decree which the court made charging the funds in the executor's hands with a trust in favor of the plaintiffs is fully warranted by the evidence and findings."

It will be noticed that the dispute there was between children with whom the contract had been made and who had performed special services and other children whose only claim was based on the right of inheritance. It seems to us that the distinction between the two cases is at once manifest, and that this case is no authority for the appellants.

We have read all the other cases cited in the briefs but do not consider them of sufficient importance to require discussion. The superior equities are with the respondent, and the judgment is affirmed.

Main, C. J., Fullerton, Mitchell, and Pemberton, JJ., concur.