Argued April 27, affirmed June 25, petition for rehearing denied July 21, petition for review allowed by Supreme Court November 4, 1970.

THOM, *Respondent, v.* BAILEY ET AL, *Appellants.*

471 P2d 809

*William E. Hanzen,* Pendleton, argued the cause for appellants. On the briefs were Isaminger & Hanzen, Pendleton, and George W. Roberts, Walla Walla, Washington.

*Robert W. Collins,* Pendleton, argued the cause for respondent. With him on the brief were Sherwood & Tugman, Walla Walla, Washington.

Before SCHWAB, Chief Judge, and FOLEY and BRANCHFIELD, Judges.

FOLEY, J.

This is a probate proceeding in which the trial court found that the plaintiff, Meta Marie Thom, was the daughter of the deceased, James Elbridge Elliott, and as such was his sole heir and entitled to inherit his entire estate. Defendant, the personal representative of James Elbridge Elliott's estate, appeals, contending that the trial court erred (1) in denying her motion to dismiss the proceedings, and (2) in finding that the evidence supported plaintiff's claim.

James Elbridge Elliott died intestate on April 24, 1967. He and Dorothy Jane Thom (now Keil) were never married, but had had sexual intercourse once during April 1953. A daughter, Meta Marie Thom, the plaintiff here, was born out of wedlock to Dorothy Jane Thom on December 30, 1953.

After Elliott's death probate proceedings were commenced with Gladys Bailey, Elliott's mother, as personal representative. Thereafter Meta Marie Thom filed a claim of heirship and petition for determination of heirship asserting that she is the natural daughter of James Elbridge Elliott and as such is his sole heir and is entitled to receive all property of his estate. She also filed a complaint in equity praying that the court enter a decree declaring her to be the sole heir. The parties stipulated to a consolidation of the equity and probate cases. The defendant, Elliott's mother, denied

the paternity and moved for a dismissal of the proceedings, contending that paternity must be formally established under ORS 109.070, and that a determination of heirship under ORS 117.510 et seq. is not such a method of establishing paternity. The circuit court denied the motion and found for plaintiff.

As pointed out in *Walker v. Sherriff*, 2 Or App 322, 468 P2d 655 (1970), the procedure for determining heirship, provided in ORS 117.510 et seq., is to be utilized if there is doubt or uncertainty as to who are heirs. That is precisely the procedure followed here. The trial court properly denied the motion to dismiss the proceedings.

As to the second assignment of error, a detailed examination of the facts will be necessary.

Plaintiff's mother, Dorothy Jane Thom, first met James Elbridge Elliott in early April 1953. He was 24, she was 23, and both were single. She testified that the next time she saw Elliott was April 11, 1953. (Elliott, by deposition given in September 1954, said it was April 18, 1953.) They agree that on this second meeting they took a midnight ride in Elliott's automobile and parked on a back road. She claims she was raped and that the sex act occurred. Elliott's version of the incident as related in his deposition was to the effect that she was more or less cooperative. He stated that he had intercourse with her, but denied that he reached a full sexual climax.

Plaintiff was born on December 30, 1953, being a normal, full term baby. She was born within the possible range of gestation if an act of sexual intercourse occurred in April 1953.

In 1954 plaintiff's mother commenced an action against Elliott for damages, alleging that she became

pregnant and gave birth to a child as a result of the rape. Elliott's deposition, mentioned previously, was given in connection with this civil action for damages. A filiation proceeding was also filed. The civil action was settled prior to trial by the payment of $7,250 to plaintiff's mother by Elliott, and the filiation proceeding was also dismissed as part of this settlement.

Defendant's principal defense in the current case is that in April 1953 Elliott was sterile. Defendant testified that her son had the disease of mumps when he was 10 or 12 years of age. Medical testimony was presented that the inflammation of the testes sometimes caused by mumps could cause sterility in a male. However, no testimony was given concerning the length or severity of Elliott's mumps, or whether he suffered from such inflammation of the testes.

Elliott was married in 1956. He and his wife wanted children but she was unable to become pregnant, so they visited Dr. Bohlman in 1957. He analyzed a specimen of Elliott's semen and found no sperm. It was his medical opinion that the mumps were the cause of the sterility. However, on cross-examination he testified that he made only a single test; that it was possible that a blockage could prevent the sperm from passing; and that it could have been something which occurred between 1953 and 1957 which made him sterile in 1957. He also testified that Elliott's testicles and scrotum appeared normal. Elliott and his wife were divorced in 1961. She has remarried and at the time of trial had three children by her present husband.

Dr. McGowan, a specialist in obstetrics and gynecology, testified for defendant. In response to hypothetical questions he said that based upon the date of plaintiff's mother's last menstrual period before preg-

nancy, March 23, 1953, it was not probable that she would conceive by intercourse on April 11, 1953, and it was extremely unlikely that conception could occur on April 18, 1953. He admitted there was a tolerance of some days and that there was a possibility of conception on April 11, 1953.

Dr. Beck, an obstetrist and gynecologist, testified for plaintiff that in his opinion mumps could be a cause of sterility in a male. He said testes so affected would be smaller than normal and that a boy of 12 could be sterile after having mumps.

Dr. Lehman, a specialist in urology, including the male reproductive organs, testified for plaintiff. He said that mumps could cause sterility but that this rarely occurs before puberty. The testes would be physically affected in that part may be destroyed and one or both would be smaller and not of normal development. A person so affected would sustain severe pain, would be quite ill, and others around him would be aware of the illness. If Dr. Bohlman's testimony about Elliott's testes being normal in appearance in 1957 was correct, it was not probable that they had been affected by mumps at the age of 10 or 12 years. In referring to Dr. Bohlman's 1957 examination of Elliott's semen, Dr. Lehman stated it would be difficult to say from this one examination that Elliott was sterile even in 1957. He would not express an opinion as to the sterility of Elliott in April 1953, because he said insufficient facts were furnished him concerning Elliott's history from 1953 to 1957.

There was no evidence of plaintiff's mother's sexual association with any other male during this period from which any inference could be drawn linking another man to this pregnancy. She denied any such as-

sociation. Elliott, in his deposition, stated he hired a detective to check on her activities. No information adduced by this detective was introduced. Elliott also said he had no knowledge or information as to her reputation.

A paternity exclusion blood test was made. The result did not exclude Elliott so it was not possible from the test to say Elliott was not the father of plaintiff.

At the time Elliott's deposition was taken he did not suggest the fact of sterility as a reason for his not being the father of plaintiff. All inferences from his testimony suggest that he believed himself capable of fathering plaintiff. No mention was made as to the fact of his childhood mumps as affecting his virility.

■ Based on our de novo review upon the record, we find that James Elbridge Elliott was the father of Meta Marie Thom and that she is the sole heir at law of the deceased Elliott. However, this is a very close question and we are influenced by the findings of the trial court, who heard and saw the witnesses. Weight should be given to the trial court's determination when the appellate court cannot resolve the issue without resort to a consideration of his findings. See *Hannan v. Good Samaritan Hosp.*, 4 Or App 178, 471 P2d 831, 91 Adv Sh 903, 476 P2d 931 (1970) Sup Ct *review denied* (1971). This is such a case.

Affirmed.