[No. 6122–1–III.   Division Three.   April 4, 1985.]

KATHLEEN McKINNON, ET AL, *Respondents*, v. PAUL R. WHITE, *as Administrator, Defendant*, FRANCES N. SHERRY, ET AL, *Appellants*.

*Katherine Dale Makus* and *Makus & Makus,* for appellants.

*Phelps R. Gose, Axtell, Karademos, Briggs & Gose, Charles B. Phillips,* and *Taggart & Phillips, Inc., P.S.,* for respondents.

THOMPSON, J.—This case involves the question of whether a decedent's contract to make a will in favor of the children of his first marriage should be specifically enforced to exclude minor children of his second marriage from a share of his estate. The trial court concluded specific enforcement was proper. We reverse.

Earl and Beverly Sherry were married in 1947, and six children were born during the course of their marriage. Earl executed a will on January 31, 1956, devising his property to Beverly or, in the event of her death, to his named children and any after–born children. During their marriage, the couple entered into a partnership with Earl's parents and brother and his wife to farm Prescott and Touchet Ranches. Earl and Beverly farmed the Prescott Ranch for approximately 22 years; however, sometime in 1969, Earl

and Beverly exchanged the Prescott Ranch for the Touchet Ranch. The partnership was subsequently dissolved.

The couple separated in 1973. Earl filed for divorce in 1974, and the decree was granted in 1975. At the time of the dissolution, Earl and Beverly entered into a property settlement agreement, whereby the couple's property was equally divided with Earl and Beverly each receiving an undivided one–third interest in the Touchet Ranch. Earl's parents held the other one–third interest as tenants in common. The property settlement agreement also contained a contract to devise (contract), which is the subject of this action. The contract provided that Earl and Beverly would maintain their interest in the Touchet Ranch unencumbered and each would execute a will devising that interest to their six children in equal shares. However, during his lifetime, the only will Earl executed was the 1956 will.

Earl married Frances in 1976. Jamie, who Frances claims is Earl's natural child, was born in 1974, and legally adopted by Earl after his marriage to Frances. Frances and Earl separated in August 1980. Frances filed for dissolution on November 20, 1981, but Earl died on February 18, 1982, before a final decree was granted. On May 19, 1982, Frances gave birth to Earl, Jr.

At the time of his death, Earl's separate property, consisting of his share of the Touchet Ranch, was valued at $304,033, and the community property was valued at $2,582. On August 11, 1982, Beverly's children filed a creditor's claim against Earl's estate based on the contract and commenced an action to compel specific performance of the contract. This latter action was consolidated with the probate proceeding. Paternity of Earl, Jr., was considered during the hearing, ostensibly to aid in determining which of the parties was equitably entitled to Touchet Ranch. The court determined *In re Estate of Arland,* 131 Wash. 297, 230 P. 157 (1924) controlled, and divided the property equally among Beverly's children and Jamie. The court determined that more probably than not, Earl, Jr., was not

fathered by Earl. Following a hearing on a motion for reconsideration, the court abandoned the *Arland* holding and granted specific performance of the contract, excluding Jamie from sharing in Touchet Ranch. Frances, as surviving spouse, was granted an award in lieu of homestead, but was denied a family allowance.

Frances and her children, Jamie and Earl, Jr., contend the court erred in failing to follow *Arland*'s "balancing of equities" test. Beverly's children, on the other hand, argue the doctrine of stare decisis does not apply here, thus allowing the court to follow the "better rule" enunciated by the California Supreme Court in *In re Estate of Stewart,* 69 Cal. 2d 296, 444 P.2d 337, 70 Cal. Rptr. 545 (1968).

A number of jurisdictions recognize that children may, as third party beneficiaries, sue to enforce a separation or property settlement agreement which directs the parents to execute a will or wills devising certain property to the children. *See* Annot., *Right of Child To Enforce Provisions for His Benefit in Parents' Separation or Property Settlement Agreement,* 34 A.L.R.3d 1357, 1363 (1970). Such contracts are recognized in Washington. *See Hagen v. Messer,* 38 Wn. App. 31, 32, 683 P.2d 1140 (1984). *Accord, In re Estate of Arland, supra.*

The following language appears in Earl's and Beverly's property settlement agreement:

> Both Husband and Wife agree that neither will mortgage nor convey nor encumber any interest that either may now have or may hereafter acquire in the Touchet Ranch. Husband and Wife further agree that each will, by a valid Last Will and Testament, devise his and her interest in said Touchet Ranch (including any interest that either party may hereafter acquire) to the parties' children, above listed, share and share alike. The foregoing is intended as a contract for the benefit of the parties' children and may be specifically enforced.

Earl's 1956 will satisfied this provision until his marriage to Frances and the subsequent adoption of Jamie. Although the trial court found Earl's will was "revoked by his divorce from Beverly Sherry and his remarriage to Frances . . ."

(finding of fact 24),[1] the correct view is that the will was revoked only as to the surviving spouse, Frances.

RCW 11.12.050 provides:

> If, after making any will, the testator shall marry and the spouse shall be living at the time of the death of the testator, such will shall be deemed revoked as to such spouse, unless provision shall have been made for such survivor by marriage settlement, or unless such survivor be provided for in the will or in such way mentioned therein as to show an intention not to make such provision, and no other evidence to rebut the presumption of revocation shall be received. A divorce, subsequent to the making of a will, shall revoke the will as to the divorced spouse.

When this version of the statute was proposed, it was with the specific idea that the will would be revoked only as to the surviving spouse, thereby allowing the testator's intention to "be observed with respect to the remainder of his estate." Stewart & Steincipher, *Probate Reform in Washington,* 39 Wash. L. Rev. 873, 882 (1965). Thus, Earl died testate as to Jamie and Earl, Jr., since his will provides for "children hereafter born." As for Frances, the statute states that Earl died intestate as to her. However, Frances does not seek to recover her intestate share. Therefore, the question to be determined is what effect the contract to devise has on the provisions of Earl's will which devise property to the minor children of his second marriage.

The trial court initially applied the equitable principles of *Arland,* but later abandoned that holding. Charles Arland and his first wife, Mary, entered into a written agreement to execute mutual warranty deeds covering all the couple's property. The deeds were to vest the survivor with title to the entire property. It was further agreed the survivor would immediately, upon the death of the other party, make a will, giving whatever he or she had at his or

---

[1]Frances has assigned error to this finding. Although denominated a finding of fact, this is a conclusion of law and may be reviewed as such. *Woodruff v. McClellan,* 95 Wn.2d 394, 396, 622 P.2d 1268 (1980); *Fine v. Laband,* 35 Wn. App. 368, 374, 667 P.2d 101 (1983).

her death to the parties' children. Mary died and Charles obtained Mary's share of the property. Charles remarried without informing his second wife, Josephine, of the agreement. No children resulted from this union. At his death, Charles' will provided that Josephine would receive a one–third share of the estate, with the remaining two–thirds to Mary's children. The court found the property division equitable even in light of the contract to make a will. This holding was based upon the court's determination that Josephine was an innocent party and the court's refusal to enforce a contract which would invade the rights of that innocent party. *In re Estate of Arland, supra* at 299. The *Arland* court held that while a contract to devise property

> will be enforced if equity so demands, but although there may be equities supporting it, it will not be enforced if by so doing the rights of others will be invaded. The court may not, in its anxiety to relieve one party, inflict a wrong upon another who is entirely innocent. In other words, a contract to devise property is valid and enforcible [*sic*] unless superior equities have intervened. Equity will not enforce a contract where the result will be harsh and oppressive.

*In re Estate of Arland, supra* at 298–99. We find Jamie and Earl, Jr., to be such innocent parties. Beverly's children claim, however, the better rule followed in other jurisdictions requires strict enforcement of contracts to devise. They particularly rely upon *In re Estate of Stewart, supra.* We disagree with the interpretation placed on that case since the *Stewart* court emphasized in its holding that equity will intervene to estop a parent from breaching a contract to devise where he has benefited from the contract through the use of his wife's property during his lifetime. *Accord, Owens v. McNally,* 113 Cal. 444, 45 P. 710, 713 (1896); *Sonnicksen v. Sonnicksen,* 45 Cal. App. 2d 46, 113 P.2d 495 (1941) (citing *Owens v. McNally, supra,* for the proposition that specific performance of a contract to devise will be decreed upon recognized principles of equity). The *Arland* court relied upon *Owens v. McNally, supra,* wherein the California Supreme Court stated at

190

page 453:

> [Defendant widow] acquired distinct rights of heirship
> and succession. There might have been children born of
> the marriage with similar rights. It is true that these
> rights vested after the contract was made, but where a
> bill is brought for the specific performance of a contract,
> the after–acquired rights of third parties are equitable
> considerations to be regarded in adjudicating the ques-
> tions.

The *Owens* holding is particularly noteworthy because the
plaintiff niece was denied specific performance even though
she completely performed her part of the bargain. Other
California cases do not support the contention that Cali-
fornia courts strictly enforce contracts to devise. *See Reid
v. Asanovic,* 224 Cal. App. 2d 632, 634, 36 Cal. Rptr. 836,
837 (1964) in which the court explained the holding in
*Owens v. McNally, supra,* in conjunction with a contract to
devise in a property settlement agreement. The *Reid* court
found such a contract did not violate *Owens v. McNally,
supra,* since the contract "did not exclude, but specifically
recognized the rights of future children" and the trial court
had generously recognized the rights of the second wife.
New York also follows the rule that the specific enforce-
ment of separation agreements must give way to the rights
of future spouses and children. *Rubenstein v. Mueller,* 19
N.Y.2d 228, 225 N.E.2d 540, 278 N.Y.S.2d 845 (1967).

Finally, Beverly's children attempt to distinguish *Arland*
on its facts to avoid the application of stare decisis. That
doctrine provides "the rule laid down in any particular case
is applicable to another case involving identical or substan-
tially similar facts." *Greene v. Rothschild,* 68 Wn.2d 1, 8,
402 P.2d 356, 414 P.2d 1013 (1965); *see also Godefroy v.
Reilly,* 146 Wash. 257, 259, 262 P. 639 (1928), in which the
court stated that when it has once decided a question of
law, "that decision, when the question arises again, is not
only binding on all inferior courts in this state, but it is
binding on this court until that case is overruled." Beverly's
children argue that since no divorce occurred in *Arland,* the

consideration given to make mutual wills was merely mutual promises; whereas, in the present case, consideration is found in the parties' motivation to enter into the settlement agreement.[2] *Arland* does not dictate a precise result; rather, the differences between the facts of the two cases merely affect how the court balances the equities. We hold, therefore, the trial court was required to apply the equitable principles set forth in *Arland.* This determination that *Arland* is controlling renders the parties' final argument regarding the proper manner of enforcing the contract moot.

Frances also challenges the trial court's consideration of Earl, Jr.'s paternity. During the hearing on the contract, the court struck all portions of the record relating to any legal determination of Earl, Jr.'s parentage and severed the proceeding from any action under the Uniform Parentage Act (UPA), RCW 26.26.[3] Evidence of the blood tests, however, was retained by the court which "felt blood testing would have relevance to the determination of the cause of action as to who was entitled to this property under the claim for specific performance". The court's findings refer to these blood tests:

### XXVIII

That HLA typing tests, the results of which were stipulated in evidence, show that if Earl Sherry is the natural and biological father of plaintiffs then he is not the natural and biological father of James Earl Sherry, Jr.

Frances contends any evidence which tended to disestablish paternity was inadmissible because the UPA was not followed. Beverly's children on the other hand argue implicit in the probate court's jurisdiction is the authority to determine the decedent's legal heirs. The enactment of the UPA

---

[2]Beverly's children also cite RCW 26.09.070 for the proposition that contract terms in settlement agreements are enforceable. However, the issue is not whether the contract may be enforced, but whether it is equitable to do so.

[3]A UPA action has been initiated regarding Earl, Jr.'s parentage in conjunction with the grandparents' estate. Earl, Jr.'s right to a share in his presumptive father's estate will depend upon the outcome of that proceeding.

in 1976 repealed Washington's filiation statute. *Miller v. Sybouts,* 97 Wn.2d 445, 447, 645 P.2d 1082 (1982). Under the UPA, "[a] man is presumed to be the natural father of a child if . . . [h]e and the child's natural mother . . . have been married to each other and the child is born . . . within three hundred days after the marriage is terminated by death . . ." RCW 26.26.040(1). The UPA also provides that "any interested party" may bring an action "declaring the existence or nonexistence of the relationship at any time." *Miller v. Sybouts, supra* at 448; RCW 26.26-.060(1)(a). The UPA makes the child an indispensable party to an action to determine parentage affecting the trial court's jurisdiction. A parent may not represent a minor child under the UPA; rather, a guardian ad litem must be appointed and he must actually appear at the proceeding to protect the child's interest. *Hayward v. Hansen,* 97 Wn.2d 614, 619, 647 P.2d 1030 (1982). There is no dispute among the parties that this procedure was not followed during the hearing.

RCW 26.26.080(1) provides "[t]he superior courts have jurisdiction of an action brought under this chapter. The action may be joined with . . . any other civil action in which paternity is an issue . . ." On the other hand, former RCW 11.02.010, jurisdiction in probate matters, provides:

> The superior courts in the exercise of their jurisdiction of matters of probate shall have power to probate or refuse to probate wills, . . . and settle all such estates, award processes and cause to come before them all persons whom they may deem it necessary to examine, and order and cause to be issued all such writs as may be proper or necessary, and do all things proper or incident to the exercise of such jurisdiction.

The question is whether the phrase "do all things proper or incident to the exercise of such jurisdiction" allows the court to determine paternity in the context of the probate proceeding. No Washington case appears to resolve this question.

This issue was addressed by the Oregon Supreme Court

in *Thom v. Bailey,* 3 Or. App. 97, 471 P.2d 809 (1970), *aff'd,* 257 Or. 572, 481 P.2d 355 (1971). The *Thom* court construed Oregon statutes to include the establishment of paternity in probate proceedings. However, this holding was based on specific language in the Oregon filiation statute which provided "that illegitimate, as well as legitimate, children may establish paternity for all purposes, including inheritance, under any 'other provision of law' . . ." *Thom v. Bailey, supra* at 589. The court found to construe the statute differently would be unduly harsh since the filiation statute would otherwise preclude illegitimate children from establishing paternity after the death of the alleged father unless a written acknowledgment of paternity existed or the parents had subsequently married. It should also be noted the court was construing a filiation statute rather than the UPA which, in Washington, allows an action to be brought by "any interested party" at "any time".

The rule remains that "[g]eneral and specific statutes in pari materia should be construed together and harmonized, if possible. If they conflict irreconcilably, the more specific statute will prevail, unless it appears the legislature intended to make the general statute controlling." (Citations omitted.) *Pearce v. G.R. Kirk Co.,* 22 Wn. App. 323, 326–27, 589 P.2d 302, *aff'd,* 92 Wn.2d 869, 602 P.2d 357 (1979). Here, the two statutes in question, the probate code, RCW 11.02.010, and the UPA, RCW 26.26.080(1), can be construed together and harmonized, since the first allows the probate court authority to "do all things proper or incident to the exercise of" its jurisdiction, and the second allows the court to join a paternity action with any other civil action. The added precaution of following UPA procedures in a probate setting concurs with public policy and the strong presumption of legitimacy found in the UPA. In this case, we hold that the probate court could have considered the paternity issues if the UPA procedures had been incorporated into the proceedings. Since they were not, the trial court erred in considering evidence of Earl, Jr.'s paternity in the probate proceeding.

Judgment of the trial court is reversed and the case is remanded for a determination of the parties' rights consistent with the *Arland* holding.

McINTURFF, A.C.J., and MUNSON, J., concur.

Review denied by Supreme Court June 7, 1985.