# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Marriage of:<br><br>MEHMET SERKAN KETENCI,<br><br>                Appellant,<br><br>      and<br><br>AINO KAARINA KETENCI,<br><br>              Respondent. | DIVISION ONE<br><br>No. 85871-8-I<br><br>UNPUBLISHED OPINION |

DWYER, J. — Mehmet Serkan Ketenci appeals from the order of the superior court denying his motion for de novo review of an arbitration decision resolving certain parenting plan disputes between him and Aino Ketenci. The two parties had voluntarily agreed to submit their disputes to arbitration. On appeal, Mehmet[1] asserts that the superior court erred by concluding that it did not have statutory authority to conduct a de novo review of an arbitration decision resolving parenting plan disputes submitted to arbitration by voluntary agreement. Because the legislature, during the times in question, intended for trial courts to have limited statutory authority to review arbitration decisions resolving controversies submitted by voluntary agreement, and the legislature, in so doing, did not evince an intent to exempt voluntary arbitrations of unresolved

---

[1] For clarity, we do not refer to the parties by resort to their last names. No disrespect is intended.

parenting plan disputes, Mehmet's assertion is incorrect.[2]

Mehmet also asserts that the trial court abused its discretion in granting Aino's request for an award of attorney fees in this matter. In this regard, we agree.

Therefore, we affirm in part, reverse in part, and remand the matter to the trial court for it to readdress its prior award of attorney fees.

I

Mehmet and Aino were married in November 2014. They had two children. In January 2022, Mehmet and Aino became separated. They initially filed a joint separation petition. Aino later withdrew from the petition. Mehmet then amended the petition to request dissolution of their marriage.

Several months later, Mehmet and Aino each signed a document captioned as a CR 2A Stipulation and Agreement. The document specified that "[b]oth parties agree that this agreement is fair, just and equitable, and they are affixing their signature thereto freely, knowingly and voluntarily without duress or coercion of anyone." The document provided that it memorialized their "full and final settlement on the issues in this divorce, *including most of the provisions for the final parenting plan*, the provisions for the child support order, and property division." (Emphasis added.) The document further provided that "[t]he parties agree to work together to finalize a parenting plan by the end of January 2023." The document also provided that

_____

[2] We note that, on January 1, 2024, after the times in question, the Uniform Family Law Arbitration Act went into effect, setting forth distinct rules for judicial review of an arbitration of certain parenting plan disputes. UNIFORM FAMILY LAW ARBITRATION ACT, SUBSTITUTE H.B. 1088, at 14, 68th Leg., Reg. Sess. (Wash. 2023).

> [a]ll remaining details of the parenting plan will be negotiated between the parties. If the parties cannot reach a negotiated agreement, the parties shall immediately engage [one of three identified mediators], whomever is first available, to mediate the remaining issues of the final parenting plan. *If the parties cannot reach a mediated settlement, the parties agree to submit the unresolved issues to binding arbitration with the same mediators.*

(Emphasis added.) Thereafter, the parties unsuccessfully attempted to reach agreement on various parenting plan issues.

In May 2023, the parties submitted these unresolved parenting plan disputes to arbitration in accordance with the foregoing agreement. The arbitrator heard testimony and issued an award resolving the disputed issues.[3] Mehmet requested that the award be reconsidered, and the arbitrator did so, modifying it in part.

Over the next three months, Mehmet did not file a motion to vacate, modify, or correct that arbitration award. Instead, in August 2023, Mehmet filed a motion in King County Superior Court captioned as a "motion for oral testimony for hearing on de novo review of arbitrator's decision." Aino contested Mehmet's motion and requested an award of attorney fees and costs incurred in responding to his motion.

In September 2023, the superior court denied Mehmet's motion, ruling that

---

[3] The arbitrator's award stated that:

> I note that I have adopted only a few of Mehmet's proposals, and more often I have agreed with Aino's position on what language should be included in this plan. This is not based on any particular feeling about these parents, but on my general philosophy of jurisprudence when it comes to parenting plans. Both parents appear deeply committed to their children; the questions presented are more in the nature of the court's management of a family than the quality of parenting.

> [t]he Court does not have jurisdiction to review the arbitration decision in this matter. The parties entered into binding arbitration voluntarily. The CR2A signed on November 22, 2022, was entered into freely and voluntarily. RCW 7.04A does not permit Court review due to the voluntary agreement to submit to binding arbitration.

The court also granted Aino's request for an award of attorney fees and costs.

One month later, in October 2023, the parties presented to the trial court a final decree of dissolution, findings of fact and conclusions of law, and, as pertinent here, a final parenting plan containing both their previously stipulated terms as well as those resolved during arbitration. The trial court reviewed, signed, and entered the documents as the orders of the court.

Mehmet now appeals.

II

A

Mehmet asserts that the trial court erred by ruling that it did not have statutory authority to conduct a de novo review of the parties' arbitration of their unresolved parenting plan disputes that they voluntarily agreed to submit to arbitration. The trial court erred in so ruling, Mehmet contends, because the legislature intended for trial courts to have broad reviewing authority over arbitrations involving parenting plan disputes, regardless of whether the parties voluntarily agreed to submit such disputes to arbitration. We disagree.

Our Supreme Court has instructed as follows:

> Superior courts have original jurisdiction in the categories of cases listed in the constitution, which the legislature cannot take away. WASH. CONST. art. IV, § 6; State v. Werner, 129 Wn.2d 485, 496, 918 P.2d 916 (1996) (quoting Blanchard v. Golden Age Brewing Co., 188 Wash. 396, 415, 63 P.2d 397 (1936)). As we ruled long

4

ago, "Any legislation, therefore, the purpose or effect of which is to divest, in whole or in part, a constitutional court of its constitutional powers, is void as being an encroachment by the legislative department upon the judicial department." Blanchard, 188 Wash. at 415. The legislature can, however, expand and shape jurisdiction, consistent with our constitution. WASH. CONST. art. IV, § 6; Dougherty v. Dep't of Labor & Indus., 150 Wn.2d 310, 316-17, 76 P.3d 1183 (2003).

ZDI Gaming Inc. v. Wash. State Gambling Comm'n, 173 Wn.2d 608, 616-17, 268 P.3d 929 (2012). As a corollary, "[p]ublic policy is generally determined by the Legislature and established through statutory provisions." In re Marriage of Burke, 96 Wn. App. 474, 478, 980 P.2d 265 (1999).

We have recognized that, with regard to voluntary agreements to arbitrate,

Washington courts consistently express judicial approval of the policy underlying arbitration of disputes. Godfrey v. Hartford Cas. Ins. Co., 142 Wn.2d 885, 891, 16 P.3d 617 (2001). Contractually agreed arbitration "'is a substitute for, rather than a mere prelude to, litigation.'" Godfrey, 142 Wn.2d at 892 (quoting Thorgaard Plumbing & Heating Co. v. King County, 71 Wn.2d 126, 131-32, 426 P.2d 828 (1967)). When parties agree to arbitrate their disputes, they "affirmatively invoke the jurisdiction of Washington courts to facilitate and enforce the arbitration." Id. at 896. "They cannot submit a dispute to arbitration only to see if it goes well for their position before invoking the courts' jurisdiction." Id. at 897. Accordingly, courts accord substantial finality to arbitration decisions rendered in accordance with the parties' contract and chapter 7.04 RCW.[4] See Davidson v. Hensen, 135 Wn.2d 112, 118, 954 P.2d 1327 (1998).

Dahl v. Parquet & Colonial Hardwood Floor Co., 108 Wn. App. 403, 407, 30 P.3d 537 (2001).

"Arbitration is a statutory proceeding. Both the rights of the parties and the power of the court are governed entirely by statute." In re Marriage of Smith-

---

[4] For the purpose of our decision, the policies and presumptions applicable to judicial review of an arbitration award as provided in chapter 7.04A RCW and former chapter 7.04 RCW are the same.

Bartlett, 95 Wn. App. 633, 636, 976 P.2d 173 (1999) (citing N. State Constr. Co. v. Banchero, 63 Wn.2d 245, 249, 386 P.2d 625 (1963); Puget Sound Bridge & Dredging Co. v. Frye, 142 Wash. 166, 177, 252 P. 546 (1927)).  When interpreting a statute, we must discern and implement the intent of the legislature.  Johnson v. Recreational Equip., Inc., 159 Wn. App. 939, 946, 247 P.3d 18 (2011) (citing Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 9, 43 P.3d 4 (2002)).  "[I]f the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent."  Campbell & Gwinn, 146 Wn.2d at 9-10.  We discern the plain meaning of the statute from the ordinary meaning of the language, the context of the statute, its related provisions, and the statutory scheme as a whole.  Lake v. Woodcreek Homeowners Ass'n, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010).

A trial court's interpretation of the arbitration statutes is a question of law which we review de novo.  Smith-Bartlett, 95 Wn. App. at 636 (citing Byrne v. Ackerlund, 108 Wn.2d 445, 455, 739 P.2d 1138 (1987); In re Marriage of Kirshenbaum, 84 Wn. App. 798, 806, 929 P.2d 1204 (1997)).

In general, chapter 7.04A RCW, the codification of the Uniform Arbitration Act, governs judicial review of arbitration by voluntary agreement.  The act provides that, "[a]n agreement contained in a record to submit to arbitration *any existing* or subsequent *controversy* arising between the parties to the agreement is valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of contract."  RCW 7.04A.060(1) (emphasis added).  The act provides that parties who agree to arbitrate have only a limited right to

6

judicial review: the right to request that the court vacate, modify, correct, or confirm an award arising from such arbitration. RCW 7.04A.230, .240. The act does not provide to parties to arbitration by voluntary agreement the right to otherwise seek de novo review of either the arbitration itself or the resulting award.

For the following reasons, the broad scope of the Uniform Arbitration Act suggests that, during the time in question, the legislature intended for the trial court to have only limited authority to review an arbitrator's resolution of parenting plan disputes when the arbitration was convened as the result of a voluntary agreement of the parties. Although the Uniform Arbitration Act does not expressly identify the arbitration of unresolved parenting plan disputes as falling within its purview, it also does not expressly exclude arbitration of such from its reach. Indeed, the act relies on broad terms—"an agreement," "record," "any existing . . . controversy"—to define the consensus, form, and subject matter to which the legislature intended the act to apply. Given all of this, it is plain that "any existing . . . controversy" between parties can reasonably be understood to include unresolved parenting plan disputes between parties. RCW 7.04A.060(1).

Therefore, the provisions of the Uniform Arbitration Act suggest that the legislature intended that the act apply to arbitrations involving unresolved parenting plan disputes submitted by voluntary agreement. Thus, absent indicia of legislative intent to the contrary, a trial court reviewing such an arbitration would not have the broad authority asserted by Mehmet but, rather, would have only the limited statutory authority specified by the legislature.

7

B

Mehmet next asserts that the legislature intended for RCW 26.09.184(4) to grant the trial court the authority to conduct de novo review of arbitrations resolving parenting plan disputes, even when such arbitrations arose pursuant to the parties' voluntary agreement. Again, Mehmet is incorrect.

We have stated that

> "'[w]hen two statutes appear to conflict, every effort should be made to harmonize their respective provisions.'" State v. Lessley, 118 Wn.2d 773, 781, 827 P.2d 996 (1992) (quoting State v. Lessley, 59 Wn. App. 461, 464-65, 798 P.2d 302 (1990)); McKinnon v. White, 40 Wn. App. 184, 193, 698 P.2d 94, review denied, 103 Wn.2d 1042 (1985). In interpreting statutes, the court must give effect to all language used by the Legislature and give preference to the specific statute only if the two statutes deal with the same subject matter and conflict to such an extent that they cannot be harmonized. Omega Nat'l Ins. Co. v. Marquardt, 115 Wn.2d 416, 425, 799 P.2d 235 (1990); Lessley, [118 Wn.2d] at 781. In addition, without a showing of ambiguity, a reviewing court derives a statute's meaning from its language alone and assumes that the Legislature meant exactly what it said. Geschwind v. Flanagan, 121 Wn.2d 833, 840-41, 854 P.2d 1061 (1993). "We are obliged to give the plain language of a statute its full effect, even when its results may seem unduly harsh." Geschwind, [121 Wn.2d] at 841 (citing State v. Pike, 118 Wn.2d 585, 591, 826 P.2d 152 (1992)).

Leson v. State, 72 Wn. App. 558, 563-64, 864 P.2d 384 (1993).

In general, chapter 26.09 RCW sets forth certain rights of parties and powers of the court with regard to dissolution proceedings and legal separation. RCW 26.09.184 reads, in pertinent part, as follows:

> (2) CONTENTS OF THE PERMANENT PARENTING PLAN. *The permanent parenting plan shall contain provisions for resolution* of future disputes between the parents, allocation of decision-making authority, and residential provisions for the child.
> . . . .

> (4) DISPUTE RESOLUTION. *A process for resolving disputes, other than court action, shall be provided* unless precluded or limited by RCW 26.09.187 or 26.09.191. A dispute resolution process may include counseling, mediation, or arbitration by a specified individual or agency, or court action. *In the dispute resolution process: . . .*
>     *(e) The parties have the right of review from the dispute resolution process to the superior court;* and
>     (f) The provisions of (a) through (e) of this subsection *shall be set forth in the decree.*

(Emphasis added.)

Division Three of this court summarized the relevant portions of that provision as follows:

> *RCW 26.09.184([4]) [sets forth] mandatory parenting plan arbitration*:
> This arbitration is governed by RCW 26.09.184([4]). The court's authority to mandate arbitration of disputes about the implementation of parenting plans derives solely from RCW 26.09.184([4]). This statute mandates the inclusion in every parenting plan of a dispute resolution process, such as arbitration, as an alternative to court action. RCW 26.09.184([4]). The statute requires that the precise language of the statute be included in every decree. RCW 26.09.184([4])(f).

Smith-Bartlett, 95 Wn. App. at 637-38.[5]

RCW 26.09.184(4) does not grant the superior court the broad statutory authority asserted by Mehmet. Although the provision expressly grants the superior court the authority to review parenting plan arbitrations, it does so in the statutory context of *mandatory* arbitrations, those arising from the dispute resolution clause required, by subsection (f) of that same provision, to be included within applicable permanent parenting plans. That provision does not expressly indicate—nor reasonably imply—that arbitration of a parenting plan by

---

[5] The court in Smith-Bartlett cited to RCW 26.09.184(3), which, in 2007, was recodified as RCW 26.09.184(4). See DISSOLUTION PROCEEDINGS, SECOND SUBSTITUTE SENATE BILL 5470, 60th Leg., Reg. Sess., at 28 (Wash. 2007).

9

voluntary agreement falls within its purview. Nor does Mehmet attempt to make such an argument.[6]

Furthermore, RCW 26.09.184(4) and the provisions of chapter 7.04A RCW can be reasonably harmonized so as to not conflict with one another. Indeed, each provision appears to set forth a public policy by the legislature to require differing degrees of judicial review based on the circumstances giving rise to the arbitration in question. Chapter 7.04A RCW limits trial courts' statutory authority to review arbitration of unresolved parenting plan disputes by voluntary agreement, whereas RCW 26.09.184(4) grants a trial court broader statutory authority to review arbitration of permanent parenting plan disputes arising from mandatory arbitration.

Therefore, we conclude that RCW 26.09.184(4) does not grant the superior court the statutory authority asserted by Mehmet.[7]

---

[6] Mehmet instead relies on excerpted citations from Smith-Bartlett to support the notion that the trial court in this matter had authority to consider his motion to review de novo the arbitration herein. Mehmet's reliance is unavailing.

As an initial matter, Smith-Bartlett did not involve a voluntary agreement by the parties therein to submit unresolved parenting plan disputes to arbitration nor did the case involve a trial court determination that it lacked statutory authority to review such an arbitration. Rather, Smith-Bartlett involved court-ordered arbitration, pursuant to chapter 26.09 RCW, pursuant to the terms of the parties' previously entered permanent parenting plan, and a trial court order that improperly determined that the parties' rights after the mandatory arbitration would be controlled by chapter 7.04A RCW, not chapter 26.09 RCW. Smith-Bartlett, 95 Wn. App. at 635. The appellate court determined that the superior court therein had erred in not applying the rules of chapter 26.09 RCW to a mandatory arbitration, including that "[t]he superior court cannot mix and match the arbitration rules from different statutes, because its jurisdiction to mandate arbitration is statutory." Smith-Bartlett, 95 Wn. App. at 639 (citing Banchero, 63 Wn.2d at 249). Mehmet does not provide additional persuasive argument or analysis as to how Smith-Bartlett bears on the matter before us. Thus, Mehmet's claim fails.

[7] Mehmet also relies on RCW 26.09.070(3) to support his contentions. We decline to consider this contention. It is a general rule that "appellate courts will not consider issues raised for the first time on appeal." State v. Kirkman, 159 Wn.2d 918, 926, 155 P.3d 125 (2007) (citing RAP 2.5(a)). Mehmet did not present an argument predicated on RCW 26.09.070(3) to the trial court, thereby depriving both Aino the opportunity to respond, and the trial court the opportunity to issue a ruling in response, to such an argument. We therefore decline to consider this assertion.

C

Mehmet nonetheless asserts that the Uniform Family Law Arbitration Act, which became effective in Washington after the times in question herein, supports that the legislature had, during the times in question, intended for trial courts to have authority to conduct a de novo review of any parenting plan arbitration decision. Again, we disagree.

It is well-established that

> "'[a] court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary.'" Marine Power & Equip. Co. v. Wash. State Human Rights Comm'n Hearing Tribunal, 39 Wn. App. 609, 621, 694 P.2d 697 (1985) (quoting Bradley v. Sch. Bd. of City of Richmond, 416 U.S. 696, 711, 94 S. Ct. 2006, 40 L. Ed. 2d 476 (1974)).

In re Dependency of A.M.M., 182 Wn. App. 776, 789, 332 P.3d 500 (2014). Furthermore, we presume "that the Legislature does not indulge in vain and useless acts and that some significant purpose or object is implicit in every legislative enactment." Fifteen-O-One Fourth Ave. Ltd. P'ship v. Dep't of Revenue, 49 Wn. App. 300, 303, 742 P.2d 747 (1987) (citing Kelleher v. Ephrata Sch. Dist. No. 165, 56 Wn.2d 866, 873, 355 P.2d 989 (1960)); see also Johnson, 159 Wn. App. at 949 ("We will not assume that the legislature, by enacting [a statute] engaged in a meaningless act." (citing JJR Inc. v. City of Seattle, 126 Wn.2d 1, 10, 891 P.2d 720 (1995))).

The legislature caused the Uniform Family Law Arbitration Act to go into effect on January 1, 2024, several months after the times in question. UNIFORM FAMILY LAW ARBITRATION ACT, SUBSTITUTE H.B. 1088, at 14, 68th Leg., Reg. Sess.

(Wash. 2023).[8]  Section 19 of the act provides for judicial review of arbitration decisions involving child-related disputes in circumstances in which the arbitration award has yet to be confirmed:

> VACATION OR AMENDMENT BY COURT OF UNCONFIRMED AWARD. (1) On motion of a party, the court shall vacate an unconfirmed award if the moving party establishes that:
>
> (a) The award was procured by corruption, fraud, or other undue means;
>
> (b) There was:
>
> (i) Evident partiality by the arbitrator;
>
> (ii) Corruption by the arbitrator; or
>
> (iii) Misconduct by the arbitrator substantially prejudicing the rights of a party;
>
> (c) The arbitrator refused to postpone a hearing on showing of sufficient cause for postponement, refused to consider evidence material to the controversy, or otherwise conducted the hearing contrary to section 13 of this act, so as to prejudice substantially the rights of a party;
>
> (d) The arbitrator exceeded the arbitrator's powers;
>
> (e) No arbitration agreement exists, unless the moving party participated in the arbitration without making a motion under section 7 of this act not later than the beginning of the first arbitration hearing; or
>
> (f) The arbitration was conducted without proper notice under section 6 of this act of the initiation of arbitration, so as to prejudice substantially the rights of a party.
>
> (2) Except as otherwise provided in subsection (3) of this section, on motion of a party, the court shall vacate an unconfirmed award that determines a child-related dispute if the moving party establishes that:
>
> (a) The award does not comply with section 15 of this act or law of this state other than this chapter governing a child-related dispute or is contrary to the best interests of the child;
>
> (b) The record of the hearing or the statement of reasons in the award is inadequate for the court to review the award; or
>
> (c) A ground for vacating the award under subsection (1) of this section exists.
>
> (3) If an award is subject to vacation under subsection (2)(a) of this section, on motion of a party, the court may amend the

---

[8] The Uniform Family Law Arbitration Act is to be codified as a new chapter in Title 26 RCW.  S.H.B. 1088, supra, at 14.  The parties do not dispute that the legislature intended for the act to go into effect prospectively.

> award if amending rather than vacating is in the best interests of
> the child.
>
> (4) *The court may determine a motion under subsection (2)*
> *or (3) of this section based on the record of the arbitration hearing*
> *and facts occurring after the hearing or may exercise de novo*
> *review.*

S.H.B. 1088, supra, at 10-11 (emphasis added).

The legislature's enactment of the Uniform Family Law Arbitration Act suggests that it intended to alter the previously granted authority of trial courts to review decisions arising from voluntary arbitrations of parenting plan disputes. Indeed, the text of the act suggests that the legislature has granted broader authority to the trial court to review certain portions of an arbitration decision regarding child-related disputes. It is plain that such disputes would overlap with disputes that may arise in the context of forming a parenting plan. That the legislature in the Uniform Family Law Arbitration Act appears to have granted to trial courts broader authority to review such disputes suggests that, consistent with the foregoing analysis, the legislature had not in the Uniform Arbitration Act granted such authority to trial courts. Indeed, if the legislature had previously granted trial courts such authority, it would have no need to include the foregoing provisions in its more recent enactment—such provision of authority would have been redundant and unnecessary. Given that we presume that the legislature did not act in vain, this suggests that, during the times in question, the legislature had not provided trial courts with the broad authority asserted by Mehmet. Fifteen-O-One Fourth Ave. Ltd. P'ship, 49 Wn. App. at 303 (citing Kelleher, 56 Wn.2d at 873). Thus, Mehmet's assertion in reliance on the legislature's new enactment fails.

D

In sum, the statutory arbitration framework in effect during the times in question reflects that the legislature intended for trial courts to have limited authority to review arbitration decisions resolving parenting plan disputes submitted to arbitration by voluntary agreement. It is undisputed that the parties herein freely agreed to submit their unresolved parenting plan disputes to arbitration and that the arbitration herein arose pursuant to their submission of such disputes to arbitration. It is further undisputed that Mehmet's motion challenging the arbitrator's award resolving those disputes had requested that the trial court review the arbitration herein de novo.

Given the foregoing, the trial court properly applied chapter 7.04A RCW to the matter before it and properly determined that it did not have statutory authority to conduct a de novo review of the arbitration decision herein.[9] Thus, the trial court did not err in denying Mehmet's motion. Accordingly, Mehmet's assertions do not establish a basis for appellate relief.[10]

III

Mehmet next asserts that the trial court abused its discretion in granting Aino's request for an award of attorney fees in this matter. In this, we agree.

---

[9] Mehmet urges us to conclude that the foregoing interpretation would result in an abdication of trial courts' authority over parenting disputes or, conversely, in parties being able to deprive the court of such authority. As an initial matter, Mehmet did not present these allegations to the trial court. Again, it is a general rule that "appellate courts will not consider issues raised for the first time on appeal." Kirkman, 159 Wn.2d at 926 (citing RAP 2.5(a)).

[10] Mehmet's appellate briefing repeatedly attempts to invoke certain "parens patriae" powers in alleged support of his assertion on appeal. He did not present this argument to the trial court, and we thus decline to consider it. RAP 2.5(a). Nevertheless, even if he had properly raised this issue in the trial court, he does not present persuasive authority or cogent analysis in support of such a notion on appeal and, for this reason as well, we decline to consider his contention. Saunders, 113 Wn.2d at 345.

We will uphold an award of attorney fees unless we find the trial court manifestly abused its discretion in granting the award. Chuong Van Pham v. City of Seattle, 159 Wn.2d 527, 538, 151 P.3d 976 (2007). A trial court abuses its discretion when its exercise thereof is based on untenable grounds, is made for untenable reasons, or evinces a conclusion that no reasonable judge would have reached. Chuong Van Pham, 159 Wn.2d at 538; State v. Comcast Cable Commc'ns Mgmt., LLC, 16 Wn. App. 2d 664, 676, 482 P.3d 925 (2021) (citing Sofie v. Fibreboard Corp., 112 Wn.2d 636, 667, 771 P.2d 711, 780 P.2d 260 (1989)). The burden of demonstrating that a fee is reasonable is upon the fee applicant. Scott Fetzer Co. v. Weeks, 122 Wn.2d 141, 151, 859 P.2d 1210 (1993); see also Berryman v. Metcalf, 177 Wn. App. 644, 656-57, 312 P.3d 745 (2013).

In considering such an award, however, the trial court's "findings must show how the court resolved disputed issues of fact and the conclusions must explain the court's analysis." Berryman, 177 Wn. App. at 658; accord Mayer v. City of Seattle, 102 Wn. App. 66, 82-83, 10 P.3d 408 (2000) ("Because the trial court made no findings regarding the specific challenged items, the record does not allow for a proper review of these issues.").

Here, the parties' CR 2A Stipulation and Agreement provided that

> [i]f either party defaults in the performance of any of the terms, provisions, or obligations of this Agreement, and it becomes necessary to institute legal proceedings to effectuate the performance of any such terms, provisions, or obligations, the prevailing party shall be awarded their expenses, including reasonable attorney fees, incurred in connection with such enforcement proceedings.

Before the trial court, Aino requested an award of attorney fees of $2,613, including eight hours of services provided by her attorney and her attorney's paralegals. Aino argued that such an award was warranted because Mehmet's motion for a hearing with the presentation of testimony delayed the entry of the final orders resulting from the parties' binding arbitration, constituted an attempt to bypass the terms of the parties' stipulation and agreement, and was frivolous. Mehmet's counsel objected, stating that

> [t]here has been no bad faith shown, no abuse of litigation, and no demonstration of need for attorney fees. There has been only a good-faith argument from the Petitioner based upon case law and facts. . . . If the court does award attorney fees, the amount Respondent requests is unreasonable, based upon 8 hours of attorney services and costs.

The trial court ruled as follows: "Respondent's request for fees associated with her Response to the Motion to Enforce CR2A is GRANTED. Petitioner shall remit payment directly to Respondent, Aino Ketenci, within 14 days of this Order. Petitioner shall pay $2,644.00 in attorney's fees to Respondent."[11]

In resolving this matter, the trial court abused its discretion. The trial court did not provide findings, analysis, or conclusions in support of its determination nor did it address the several bases on which Mehmet alleged that the requested award was unreasonable. Again, a trial court "must show how the court resolved disputed issues of fact and the conclusions must explain the court's analysis." Berryman, 177 Wn. App. at 658. The trial court did not do so here, and the

---

[11] The sum of $2,644 constituted $2,613 in services and $31 in costs.

16

record does not allow for a proper review of these issues. Mayer, 102 Wn. App. at 82-83. Thus, in this regard, the trial court abused its discretion.

In such a situation, "a fee award that is unsupported by an adequate record will be remanded for the entry of proper findings of fact and conclusions of law that explain the basis for the award." Berryman, 177 Wn. App. at 659 (citing Chuong Van Pham, 159 Wn.2d at 540; Mahler v. Szucs, 135 Wn.2d 398, 435, 957 P.2d 632, 966 P.2d 305 (1998); Eagle Point Condo. Owners Ass'n v. Coy, 102 Wn. App. 697, 715-16, 9 P.3d 898 (2000)).

We therefore remand the matter to the trial court for it to readdress its prior award of attorney fees.[12]

IV

Aino requests an award of attorney fees on appeal. Because each party has prevailed in part, her request is denied. RAP 18.1.

Affirmed in part, reversed in part, and remanded.

WE CONCUR:

---

[12] On appeal, Mehmet does not contest the trial court's award of costs to Aino. Therefore, we affirm the trial court's award of such costs.