[No. 19835–1–I.   Division One.   September 14, 1987.]

FIFTEEN–O–ONE FOURTH AVENUE LIMITED PARTNERSHIP, ET AL, *Appellants,* v. THE DEPARTMENT OF REVENUE, ET AL, *Respondents.*

*Dennis E. Kenny, Norman B. Page,* and *Davis, Wright & Jones,* for appellants.

*Kenneth O. Eikenberry, Attorney General,* and *Joel M. Greene, Assistant; Norm Maleng, Prosecuting Attorney,* and *Sandra L. Cohen, Deputy,* for respondents.

RINGOLD, A.C.J.—The plaintiffs (taxpayers) are landowners challenging the validity and constitutionality of former RCW 36.21.080(1), the new construction statute (NCS), that allows county assessors to place newly constructed improvements to real property on the assessment rolls up to August 31 of each year and requires such improvements to be valued as of July 31 of that year. All other real property is valued as of January 1 of each year. RCW 84.40.020. The present action seeks to enjoin the county assessor from using any assessment based on a July 31 valuation date to compute the following year's tax. The trial court found the statute valid and constitutional, denied the plaintiffs' motion, and entered a summary judgment of dismissal. The plaintiffs appeal and we affirm.

The plaintiffs' property was improved between January and July of 1 or more tax years. Two of the plaintiffs paid the second half of their 1985 taxes under protest, challenging the validity of the July 31 valuation date. All plaintiffs join in this action to enjoin the assessor from using the July 31 assessment date in computing the following year's tax.

THE STATUTES AND CONSTITUTIONAL PROVISIONS

RCW 84.40.020 provides in pertinent part:

All real property in this state subject to taxation shall be listed and assessed every year, with reference to its value on the first day of January of the year in which it is assessed.

RCW 36.21.080 provides in part:

(1) The county assessor is authorized to place any property under the provisions of RCW 36.21.040 through 36.21.080 [property for which a building permit has been issued for the construction or alteration of any building for which the value of the material exceeds $500] on the assessment rolls for the purposes of tax levy up to August 31st of each year. The assessed valuation of [such] property . . . shall be considered as of July 31st of that year.

Const. art. 7, § 2 originally provided:

The legislature shall provide by law a uniform and equal rate of assessment and taxation on *all property* in the state, according to its value in money, and shall prescribe such regulations by general law as shall secure a just valuation for taxation of all property, so that every person and corporation shall pay a tax in proportion to the value of his, her, or its property . . .

(Italics ours.) Amendment 14, enacted in 1930, changed article 7 to provide in relevant part:

*All taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax* and shall be levied and collected for public purposes only. . . . *All real estate shall constitute one class: Provided,* That the legislature may tax mines and mineral resources and lands devoted to reforestation by either a yield tax or an ad valorem tax at such rate as it may fix, or by both. Such property as the legislature may by general laws provide shall be exempt from taxation.

(Italics ours.)

### STATUTES IN CONFLICT

Plaintiffs first argue that the general assessment statute, RCW 84.40.020, which directs that all real property be valued as of January 1 of each year, supersedes the NCS, RCW 36.21.080, which directs that new construction be valued as of July 31. The assessor contends that application of the rules of statutory construction to this situation reveals the Legislature clearly and intentionally established a new, mandatory valuation date for new construction.

When two statutes govern the same area and they conflict, the court must choose between them. *Gold Bar Citizens for Good Gov't v. Whalen,* 99 Wn.2d 724, 665 P.2d

393 (1983). Provisions of a specific, more recently enacted statute will prevail if there is a conflict with the provisions of a general statute. *Muije v. Department of Social & Health Servs.*, 97 Wn.2d 451, 645 P.2d 1086 (1982). In the case sub judice, the two statutes conflict. Since the NCS is the more specific statute and was more recently enacted, it prevails over the provisions of the general assessment statute. The July 31 assessment date, therefore, applies to new construction.

The taxpayers further contend the language of the NCS is merely permissive ("[t]he county assessor is authorized . . .") as opposed to the mandatory language of the general assessment statute ("[a]ll real property . . . shall be listed and assessed . . ."). Adopting the taxpayers' position would effectively repeal the NCS, even though the Legislature's recent minor amendments to that section indicate that they intended the statute to have continued effect. *See* Laws of 1985, ch. 220, § 1; Laws of 1982, 1st Ex. Sess., ch. 46, § 4.

It is presumed that the Legislature does not indulge in vain and useless acts and that some significant purpose or object is implicit in every legislative enactment. *Kelleher v. Ephrata Sch. Dist. 165*, 56 Wn.2d 866, 873, 355 P.2d 989 (1960). The provisions of the NCS, RCW 36.21.080, are not superseded by RCW 84.40.020 and are to be given effect.

### UNIFORMITY

The plaintiffs' principal argument is that the NCS violates the uniformity clause (amendment 14) of the Washington constitution[1] because the later assessment date for

---

[1]The taxpayers also assert unconstitutionality by virtue of U.S. Const. amend. 14, which provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." All arguments in the plaintiffs' brief in this connection are directed solely to the Washington uniformity clause. Were we to analyze this under the equal protection clause, as no suspect classification or fundamental right is involved, the minimal scrutiny of the rational relationship test would apply. *See Yakima Cy. Deputy Sheriff's Ass'n v. Board of Comm'rs*, 92 Wn.2d 831, 834–36, 601 P.2d 936 (1979), *appeal dismissed*, 446 U.S. 979, 64 L. Ed. 2d 835, 100 S. Ct. 2958 (1980). As the NCS meets the designated criteria and is rationally related to the purpose of providing for more uniformity in taxation, an equal protection challenge would fail.

new construction systematically and intentionally singles out this type of property for higher taxes. Although it is generally true that parcels of land under construction would be more improved and of a higher assessment value on July 31 than January 1, and thus the resultant tax would be higher, this provision does not run afoul of the uniformity clause.

Our analysis of a challenge to the constitutionality of a state statute must start with the premise that:

> [T]he state constitution is not a grant, but a restriction on the law–making power, and the power of the legislature to enact all reasonable laws is unrestrained except where, either expressly or by fair inference, it is prohibited by the state and federal constitutions. Where the validity of a statute is assailed, there is a presumption of the constitutionality of the legislative enactment, unless its repugnancy to the constitution clearly appears or is made to appear beyond a reasonable doubt.

(Citations omitted.) *Clark v. Dwyer,* 56 Wn.2d 425, 431, 353 P.2d 941 (1960), *cert. denied,* 364 U.S. 932, 5 L. Ed. 2d 365, 81 S. Ct. 379 (1961).

The crux of the problem here is contained in uniformity clause language: "All taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax . . . *All real estate shall constitute one class*". (Italics ours.) Const. art. 7, § 1 (amend. 14). Plaintiffs contend that since all real estate constitutes one class of property, this section of amendment 14 requires that all real property, including new construction, be valued as of the same date.

A similar contention was rejected in *Spokane & I.E.R.R. v. Spokane Cy.,* 75 Wash. 72, 134 P. 688 (1913), *appeal dismissed,* 238 U.S. 642, 59 L. Ed. 1502, 35 S. Ct. 284 (1914). In that case the railroad was attacking under the uniformity clause (Const. art. 7, § 2), a statutory provision that allowed the public service commission to assess the value of public service property at any time during the assessment year while most other property was assessed as of March 1. In upholding the statutory scheme, the court

stated:

> Our attention has . . . not been called to any authority, nor does it seem to be seriously contended, that it is not within the power of the legislature to permit certain classes of property to be assessed at one time and *other classes* at another time, even under our uniform constitutional taxation provisions.

(Italics ours.) *Spokane & I.E.R.R.*, at 88. Soon after the NCS was enacted, the State Attorney General relied on this case and concluded the statute does not violate the uniformity clause. *See* AGO 140 (1955). Although attorney general opinions are not controlling, they are entitled to great weight. *Elovich v. Nationwide Ins. Co.*, 104 Wn.2d 543, 550, 707 P.2d 1319 (1985).

The Washington courts have upheld under uniformity clause challenges different dates of assessment for similarly situated property revalued under 4–year, cyclical, reassessment programs. In 1972 amendment 55 was passed in an effort to eliminate the widely disparate and unconstitutionally low prevailing assessment ratios. (Amendment 55 mandated a 50 percent assessment ratio for all real property.) Recognizing that it was impossible to implement the plan within 1 year, county assessors undertook 4–year, cyclical, revaluation programs and equalization procedures as authorized by RCW 84.48.080. *See Valentine v. Johnston*, 83 Wn.2d 390, 518 P.2d 700 (1974). Under the reassessment program, the tax burden on properties reassessed during the first years was lessened somewhat by comparison with other property in the county. These 4–year programs were upheld as constitutionally uniform even though some properties paid a higher tax rate than others. *See Morrison v. Rutherford*, 83 Wn.2d 153, 516 P.2d 1036 (1973); *Snohomish Cy. Bd. of Equalization v. Department of Rev.*, 80 Wn.2d 262, 493 P.2d 1012, *appeal dismissed*, 409 U.S. 810, 34 L. Ed. 2d 65, 93 S. Ct. 68 (1972); *Carkonen v. Williams*, 76 Wn.2d 617, 458 P.2d 280 (1969).

In only one case concerned with the revaluation programs did the court find the increased tax void. *Dore v. Kinnear*,

79 Wn.2d 755, 489 P.2d 898 (1971). In *Dore* the court held the assessor acted arbitrarily and capriciously and found that gross deviations from the systematic revaluation plan constituted discriminatory action. The court concluded that reassessment of only 6 percent of the county's taxable property in the first year of the plan violated the equal protection clauses of the state and federal constitutions as well as the State's uniformity clause.

Within a few months after *Dore v. Kinnear* the Supreme Court reaffirmed *Carkonen,* distinguished *Dore v. Kinnear,* and held that the 4–year reassessment cycle provided for an equitable transition to the new rate. The court upheld the plan under a uniformity clause challenge, stating: "Discrimination in this constitutional sense is not shown by the mere fact that some parcels have been revalued before others." *Snohomish Cy. Bd. of Equalization,* at 265.

The NCS, like the revaluation plans the court has upheld, is an attempt to establish accurate fair market values. If property is improved by new construction, its value will presumably increase. By valuing new construction and construction in progress as of July 31, instead of the previous January 1, the assessor is able to include in the next year's taxes at least part of the value of improvements made each year. By contrast, if improvements made in 1985 were not valued until January 1 of 1986, the increased value would not be taxed until 1987. *See* RCW 84.09.010; RCW 84.56.020. In the interim, the improved property would be undervalued.

Statutes which allow the valuation of personal property on different dates have also been upheld under uniformity clause challenges. In *Northern Comm'l Co. v. King Cy.,* 63 Wn.2d 639, 388 P.2d 546 (1964), a county assessor was allowed by statute to value a business's inventory based upon a monthly average if the usual January 1 value would not fairly represent the taxpayer's inventory. The court concluded the statute was based on the Legislature's "concern . . . for greater, rather than less, uniformity in the tax base." 63 Wn.2d at 644. In *Thomas v. Gay,* 169 U.S. 264, 42

L. Ed. 740, 18 S. Ct. 340 (1898), the United States Supreme Court upheld two different valuation dates (May 1 for personal property located on Indian Reservations and February 1 for all other property). The petitioner contended his cattle were fatter on the later date and were thus unequally taxed. The Court noted that the different assessment times were needed to prevent some property from escaping taxation because most of the cattle were not driven onto the reservation until after the general assessment date. The Court upheld the system and noted that such matters of regulation are within the power of the state which has its reasons for employing such systems that are grounded on specific facts known to the Legislature. *Thomas,* at 281.

A recent Tennessee case dealt with the postponement of valuation on new construction until 18 months following the commencement of construction. *Metropolitan Gov't v. Hillsboro Land Co.,* 222 Tenn. 431, 436 S.W.2d 850 (1968). The Tennessee Supreme Court struck down the statute holding that a postponement of inclusion of increased value in assessments violated the constitutional requirement that all property be taxed according to its value and that taxes be equal and uniform. The court further stated that the basis of value is defined as immediate value, meaning the value of the property that year, not a past or future value.

Similarly, the Pennsylvania Supreme Court upheld a statutory interim assessment plan for new construction. *Madway v. Board for Assessment & Revision of Taxes,* 427 Pa. 138, 233 A.2d 273 (1967). Under the new plan the assessed value of new construction is updated periodically during the assessment year while most other property is assessed as of September 1. After evaluating the petitioner's claim that new construction valued as of September 1 was treated differently than other property whose value had increased for other reasons, the court upheld the constitutionality of the statute under uniformity provisions of the Pennsylvania constitution almost identical to Washington's. The Pennsylvania court struck down an amendment to the statute that would defer the interim assessment until

the newly constructed real property was either occupied or sold, noting the purpose of the amendment was to spur lagging residential construction, not to promote uniformity.

In *Teter v. Clark Cy.,* 104 Wn.2d 227, 704 P.2d 1171 (1985), the Washington court upheld different rates for different categories of real property (residential, industrial, etc.) in assessment of storm sewer charges under a uniformity clause challenge. Noting that the various classifications were based upon a determination that some types of property contributed more to water runoff, the court found the tax to be uniform because the tax applied equally to all property in each category. *Teter,* at 240. *See also Sunday Lk. Iron Co. v. Wakefield,* 247 U.S. 350, 62 L. Ed. 1154, 38 S. Ct. 495 (1918) (property tax upheld under equal protection challenge even though petitioner's property assessed at full value while other property assessed at one–third value because it was not clearly established that the town board purposely discriminated); *Griggs v. Greene,* 230 Ga. 257, 197 S.E.2d 116 (1973) (actions of assessor invalidated as violating constitutional requirement of uniformity because different subcategories or classes of real property were assessed at different rates). The holdings of these cases are best summed up by the Missouri Supreme Court:

> [C]lassification of property for tax purposes . . . means putting property of a certain nature into one class and other property into a different class and then taxing them differently, either by prescribing a different tax rate as to each or by assessing the classes at different percentages of value.

*Metal Form Corp. v. Leachman,* 599 S.W.2d 922, 927 (Mo. 1980).

The immediate effect of amendment 14 was to permit differentiation in taxes between real property and personal property or tangible and intangible other property subject to ownership. The Legislature was attempting here to simply provide an equitable and fair basis relating to all real property taxpayers.

Contrary to the taxpayers' assertions, new construction

does not bear *higher* taxes than other property. The valuation statutes operate to ensure new construction is taxed equitably with other property of similar value for which government services are available during the assessment year.

For example, consider four adjacent residential building lots, each worth $50,000 vacant:

| Lot | Land & Improvement Value on Jan. 1, 1985 | Land & Improvement Value on July 31, 1985 | Land & Improvement Value on Oct. 1, 1985 | Taxes Due in 1986 |
|---|---|---|---|---|
| A | $100,000 | $100,000 | $100,000 | $1,000 |
| B | 80,000 | 80,000 | 80,000 | 800 |
| C | 50,000 | 80,000 | 100,000 | 800 |
| D | 50,000 | 50,000 | 50,000 | 500 |

On January 1, 1985, Lot A is improved with a $50,000 house, and Lot B with a $30,000 house. Lots C and D are vacant. Assuming a tax rate of 1 percent, the owner of Lot A will pay $1,000 in taxes in 1986. The owner of Lot B will pay $800 in taxes in 1986. The owner of Lot C builds a $50,000 house identical to the house on Lot A, and as of July 31, 1985, the house is more than half complete. The assessor values it at $30,000 pursuant to the NCS. As a result the owner of Lot C will pay $800 in taxes in 1986. Lot D remains unimproved, and its owner pays $500 in taxes in 1986.

The owner of Lot C, who is subject to the new construction statute, is not suffering from *higher* taxes than owners of other property of similar value. He is paying *less* in taxes than is the owner of a house of the same value that existed on Lot A through the assessment year. He is paying more than the owner of a similar lot, Lot D, that was vacant all year. His taxes are the same as those of the owner of a house of lesser value which existed throughout the year. There is no systematic or intentional discrimination against the owner of Lot C. He is receiving evenhanded and fair treatment, consistent with the uniformity clause.

The Supreme Court's view of the 4–year valuation cycle is also applicable here:

Absolute uniformity in taxation is a chimera which this court has never sought and which we do not require. The legislature has set up an orderly system for revaluation. RCW 84.41. This system, based on a rational view of the practical realities of budgets, public acceptance and basic fairness has been accepted by this court as a systematic and nondiscriminatory solution to the demands of Const. art. 7, § 1 (amendment 14). If the system is administered in a systematic, nondiscriminatory manner, and we have no allegation or showing to the contrary, then, as here, it will be upheld as meeting the test of amendment 14. Appellants may believe there is a better method of solving the problem of property taxation or a better system, but the forum in which to press that view is the legislature, not this court.

*Sator v. Department of Rev.*, 89 Wn.2d 338, 344, 572 P.2d 1094 (1977).

No authority was cited, nor has any been found, which holds that different dates of assessment necessitate a finding that the property has been divided into different classes. Each member of the class is treated uniformly if the same standard or rate of tax is assessed against each. *See Spokane & I.E.R.R.*, at 87. Since the NCS is a reasonable attempt by the Legislature to achieve fair valuation, the plaintiffs have not met their burden of proving the statute's invalidity. We, therefore, affirm the trial court's finding that the NCS is valid and constitutional.

WILLIAMS and WEBSTER, JJ., concur.

Reconsideration denied October 22, 1987.

Review denied by Supreme Court February 1, 1988.