124 P.3d 294 (2005)
156 Wash.2d 84
ADVANCED SILICON MATERIALS, L.L.C., Respondent,
v.
GRANT COUNTY, Petitioner.
No. 75641-4.
Supreme Court of Washington, En Banc.
Argued May 19, 2005.
Decided December 8, 2005.
*295 Mr. Stephen John Hallstrom, Ms. Teresa Jeanne Chen, John Dietrich Knodell, Grant County Prosecutors Office, Ephrata, for Petitioner.
Mr. Norman J. Bruns, Mr. William Colwell Severson, Seattle, for Respondent.
Douglas P. Ruth, Lewis County Prosecutor's Office, Chehalis, for Amicus Curiae Washington Association of County Assessors.
Cameron Gordon Comfort, Olympia, for Amicus Curiae Washington State Department of Revenue.
FAIRHURST, J.
¶ 1 This case involves a property tax refund action involving the 2002 tax assessments for four real and personal property tax accounts owned by Advanced Silicon Materials, L.L.C. (ASiMI). ASiMI filed suit against Grant County for a refund of property taxes paid under protest in 2003 pursuant to RCW 84.68.020, alleging that Grant County imposed unlawful and excessive taxes on ASiMI's properties for the 2002 tax year. The superior court granted partial summary judgment to ASiMI on a key legal issue from which Grant County filed an interlocutory appeal directly with this court.
¶ 2 Grant County uses a four-year cyclical valuation system pursuant to RCW 84.41.041, meaning roughly one-fourth of the real properties within Grant County's authority are revalued for property tax purposes each year. ASiMI's real properties were last inspected and revalued in 1999. The assessed values of ASiMI's properties in the years 2000, 2001, and 2002 were based on the 1999 valuations. The issue before us is whether the superior court was correct in ordering that, despite the fact that under Grant County's cyclical revaluation system properties are only revalued once every four years, ASiMI should be allowed to establish a midcycle fair market value for its properties as of January 1, 2002. We reverse the superior court.[1]

I. FACTS
¶ 3 At all times relevant to this lawsuit the Grant County assessor used a four-year revaluation cycle for real estate. Under this system, real properties were physically inspected and revalued once every four years, with no annual statistical updates between revaluations.[2] This plan was approved by *296 the Department of Revenue. Personal properties were generally listed and assessed annually based on value as of January 1 of each assessment year.
¶ 4 In 2002, ASiMI had three real and one personal property tax accounts in Grant County. When assessments were made in 2002, the assessor had last revalued ASiMI's real properties in 1999. The 1999 values were carried forward to assessment years 2000, 2001, and 2002, altered only for physical additions and deletions.
¶ 5 ASiMI alleges that the 2002 real property assessment (based on the 1999 valuation) overshot the value of its properties as of January 1, 2002, by almost $200 million. It filed suit in Kittitas County Superior Court seeking a judgment against Grant County for a refund of taxes in the amount of $2,794,298.58.
¶ 6 ASiMI filed a motion for partial summary judgment asking the superior court to determine the correct appraisal date for the 2002 property tax assessment. ASiMI argued that resolution of this legal issue was necessary so that the parties could "prepare and present their valuation evidence as of the correct appraisal date." Clerk's Papers (CP) at 16. ASiMI contends that January 1, 2002, is the correct valuation date for the 2002 assessments, citing RCW 84.36.005 and RCW 84.40.020. The county, relying on its cyclical revaluation authority under RCW 84.41.041, argues that the correct valuation date was January 1, 1999the date on which the property was last inspected and revalued under its four-year cycle.
¶ 7 The superior court granted partial summary judgment in favor of ASiMI and established January 1, 2002, as the proper valuation date for determining the validity of ASiMI's 2002 tax assessment. In its memorandum decision, the trial court ruled that "RCW 84.36.005 and RCW 84.40.020 require the assessment be based on the value of the property on January 1, 2002." CP at 199. As such, the trial court ruled that the county's valuation established in 1999 and carried forward to 2002
can be challenged and if plaintiff establishes by clear, cogent and convincing evidence that the value of its property on January 1, 2002 was less than that which was used by the Grant County Assessor for the assessment, the plaintiff will have sustained its burden to lower the valuation to the corrected value.
CP at 200.
¶ 8 The county moved this court for discretionary review of the superior court's order upon motion for partial summary judgment. ASiMI agreed in its response that review was appropriate under RAP 2.3(b)(4) because the order involves a controlling question of law as to which there is substantial ground for a difference of opinion, and immediate review may materially advance the termination of the litigation.

II. ISSUE
¶ 9 Where a county revalues real properties once every four years, but a property owner challenges a property tax assessment in a year in which the property is not revalued, what is the proper year the litigants must use to prove the true and fair value of the property at issue: the midcycle year in which the assessment is being challenged or the year the property was last revalued by the county?

III. ANALYSIS
¶ 10 The parties agree that the legal question presented in this case centers around the interpretation of and interplay between several statutory provisions, notably RCW 84.36.005, RCW 84.40.020, and RCW 84.41.030. We review de novo decisions based on statutory interpretation. Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wash.2d 1, 9, 43 P.3d 4 (2002). Our chief goal in analyzing and applying a statute is to give effect to the legislature's intent, "and if the statute's meaning is plain on its face, *297 then the court must give effect to that plain meaning as an expression of legislative intent." Id. at 9-10, 43 P.3d 4. The plain meaning of a statute "is discerned from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question." Id. at 11, 43 P.3d 4. If a statute might be accorded more than one reasonable meaning after this inquiry, "the statute is ambiguous and it is appropriate to resort to aids to construction, including legislative history." Id. at 12, 43 P.3d 4. "We avoid readings of statutes that result in unlikely, absurd, or strained consequences." Glaubach v. Regence BlueShield, 149 Wash.2d 827, 833, 74 P.3d 115 (2003).

RCW 84.36.005
¶ 11 Chapter 84.36 RCW, entitled "Exemptions," begins by articulating the general rule that all property is subject to taxation, absent a statutory exemption:
[a]ll property now existing, or that is hereafter created or brought into this state, shall be subject to assessment and taxation for state, county, and other taxing district purposes, upon equalized valuations thereof, fixed with reference thereto on the first day of January at twelve o'clock meridian in each year, excepting such as is exempted from taxation by law.
RCW 84.36.005. The chapter then goes on to list types of properties that are exempt from taxation, as well as the applicable standards and procedures for obtaining such exemptions.
¶ 12 ASiMI attempts to read into RCW 84.36.005 the requirement that real property tax be measured against the property's fair market value as of January 1 of each assessment year. But the statute is not about the proper measure of property tax; it provides the general rule that all property is subject to taxation unless a law specifically exempts it. Id. The phrase that ASiMI clings to, "fixed with reference thereto on the first day of January at twelve o'clock meridian in each year," simply provides the date on which the "equalized valuations" of property are assigned or "fixed." Id.; see also WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 861 (1993) (defining "fix" as, among other things, to "set or place definitely," or "to assign precisely: settle on: DETERMINE, DEFINE"); id. at 1414 (defining "meridian" as midday). The statute does not define what an "equalized valuation[]" of property is and how it is determined. The plain language of RCW 84.36.005 does not require counties to conduct annual valuations nor does it require midcycle assessments to be based on the fair market value of property on January 1 of each assessment year.

RCW 84.40.020
¶ 13 Chapter 84.40 RCW, captioned "Listing of Property," contains several provisions prescribing how counties should value different types of properties. It begins, however, with a rule regarding assessment. RCW 84.40.020 provides in relevant part that "[a]ll real property in this state subject to taxation shall be listed and assessed every year, with reference to its value on the first day of January of the year in which it is assessed." ASiMI relies on this language in RCW 84.40.020, which is similar to the language ASiMI relies on in RCW 84.36.005 for its proposition that midcycle assessments are required to be based upon the fair market value of property as of January 1 of that assessment year.
¶ 14 Like RCW 84.36.005, RCW 84.40.020 refers to the value of the property that was fixed or assigned to the property as of January 1 of each assessment year. It requires annual assessments  not annual valuations. RCW 84.40.020 says nothing of the basis on which the value of real property must be determined. See RCW 84.40.020; RCW 84.04.020 (defining "value" as the "`assessed value of property' as defined in RCW 84.04.030."); RCW 84.04.030 (defining "`[a]ssessed value of property'" as "the aggregate valuation of the property subject to taxation by any taxing district as placed on the last completed and balanced tax rolls of the county preceding the date of any tax levy."). Other provisions within chapter 84.40 RCW prescribe the basis for calculating value of property, but they do not specify when and how often the values must be calculated. See, e.g., RCW 84.40.030 (requiring all property *298 to be "valued at one hundred percent of its true and fair value in money and assessed on the same basis," but not specifying how often the valuations must be conducted); RCW 84.40.033 (describing procedure for valuing timber and timberlands); RCW 84.40.036 (valuation of vessels); RCW 84.40.037 (valuation of computer software). The plain language of RCW 84.40.020 does not require midcycle assessments to be based on the fair market value of property as of January 1 of each assessment year.

RCW 84.41.030
¶ 15 Once property value has been initially determined pursuant to chapter 84.40 RCW, chapter 84.41 RCW governs the timing and procedure for subsequent valuations or re valuations. Chapter 84.41 RCW, entitled "Revaluation of Property," was enacted "to require general revaluation of property throughout the state" in response to "widespread inequality and nonuniformity in valuation of property." RCW 84.41.010.[3] Pursuant to RCW 84.41.030,
[e]ach county assessor shall maintain an active and systematic program of revaluation on a continuous basis, and shall establish a revaluation schedule which will result in revaluation of all taxable real property within the county at least once each four years and physical inspection of all taxable real property within the county at least once each six years. Each county assessor may disregard any program of revaluation, if requested by a property owner, and change, as appropriate, the valuation of real property upon the receipt of a notice of decision received under RCW 36.70B.130, 90.60.160, or chapter 35.22, 35.63, 35A.63, or 36.70 RCW pertaining to the value of the real property.
(Reviser's note omitted). Thus, counties are legislatively authorized to conduct revaluations of properties within their taxing districts as seldom as once every four years as long as such revaluations are achieved through a "systematic program of revaluation." RCW 84.41.030. Additionally, counties employing, for example, a four-year cycle of revaluation are actually prohibited from conducting revaluations out-of-cycle absent a statutory exception. Id. It is apparent that the legislature favored uniformity in the frequency of revaluations within a given taxing district over any aspiration of achieving annual revaluations. Id.; see also Burlington N., Inc. v. Johnston, 89 Wash.2d 321, 334, 572 P.2d 1085 (1977) (noting that the constitutional requirement of uniformity is "more insistent" than achieving a statutory level of assessment).[4]
¶ 16 Chapter 84.41 RCW was not "intended to affect procedures whereby taxes are imposed either for local or state purposes," but rather "concerns solely the administrative procedures by which the true *299 and fair value in money of property is determined." RCW 84.41.020 (emphasis added). The legislature was careful to distinguish the process of revaluation articulated in chapter 84.41 RCW from the process of "levying and imposing a tax" outlined elsewhere in the code, specifically defining the parameters of chapter 84.41 RCW to apply "only to procedures and methods whereby the value of property is ascertained." Id. (emphasis added). Thus, where RCW 84.40.020 requires annual assessment "with reference to [a property's] value on the first day of January" in each assessment year, it is referring to the "value" that is calculated according to a revaluation schedule in compliance with chapter 84.41 RCW. Assessed value (which is fixed annually) is distinct from the "true and fair value" that is determined through the processes of valuation and revaluation. RCW 84.40.030; see also Belas v. Kiga, 135 Wash.2d 913, 927, 959 P.2d 1037 (1998). Logically, then, where a county uses a cyclical revaluation system that meets the requirements of chapter 84.41 RCW, each midcycle assessment must be compared to the property's fair market value when it was last determined  in this case, 1999. That fair market value is the property's "value" on January 1 of each midcycle assessment year  in the present case, the "value" of ASiMI's real properties on January 1 of 1999, 2000, 2001, and 2002 must reflect the properties' true and fair value on January 1, 1999.
¶ 17 Despite the clear language of RCW 84.41.030, and the fact that counties are actually prohibited from conducting midcycle revaluations absent a statutory exception, ASiMI essentially argues that taxpayers should be allowed to conduct their own midcycle revaluations of their property whenever they believe that their property values have declined since the last time the county revalued their property according to the legislatively sanctioned program. But if ASiMI is correct, counties would have to conduct out-of-cycle revaluations every time a taxpayer alleged a declination in property value during a midcycle year, unless they simply acquiesced to every allegation. Such a system is unsupported by statute and would render meaningless the uniformity goals of cyclical revaluation programs.[5] Not only are ASiMI's arguments unsupported by the language of RCW 84.36.005 and RCW 84.40.020, they are also unreasonable in light of chapter 84.41 RCW. See Campbell & Gwinn, 146 Wash.2d at 11-12, 43 P.3d 4 (holding that the plain meaning of a statute is ascertained by looking at all related statutes).

IV. CONCLUSION
¶ 18 ASiMI has cited to no authority that allows taxpayers to challenge their midcycle assessments based on the true and fair value of their property as of January 1 of every year that the value of their property declines since it was last revalued. First, the statutes identified by ASiMI, RCW 84.36.005 and RCW 84.40.020, do not require that assessments be based on the true and fair value of property as of January 1 of each assessment year. They do not even provide a basis for taxpayers to challenge their annual assessments. Second, ASiMI's interpretations are unreasonable because they do not properly examine them in conjunction with related statutes, such as chapter 84.41 RCW. See id. at 11-12, 43 P.3d 4. We conclude that ASiMI's interpretations of RCW 84.36.005, RCW *300 84.40.020, and RCW 84.41.030 are unreasonable and decline to adopt them.
¶ 19 Accordingly, we reverse the superior court's order upon motion for partial summary judgment and remand for additional proceedings consistent with this opinion.
C. JOHNSON, MADSEN, OWENS, JJ., and BAKER, J.P.T., concur.
J.M. JOHNSON, J. (dissenting).
¶ 20 This case arose when Advanced Silicon Materials, L.L.C. (ASiMI) sought a refund of several million dollars in property taxes paid to Grant County under protest. The claim arose when ASiMI's property drastically declined from the county assessed value.
¶ 21 Grant County uses a four year revaluation cycle for taxation of real estate. Clerk's Papers (CP) at 9. Under this cyclical system, each real property in Grant County was physically inspected and revalued once every four years.[1]Id.; RCW 84.41.030. ASiMI's real property was physically inspected and revalued in 1999. CP at 9. That value was then carried forward to 2000, 2001, and 2002. Id.
¶ 22 ASiMI contends that by 2002, due to dramatic market changes, the 1999 value overvalued their real property by almost $200 million. CP at 2. In other words, by 2002 ASiMI's property had depreciated by $200 million, but it was still taxed according to the higher property value determined in 1999. We must decide whether the proper valuation date to measure the validity of the 2002 tax assessment is January 1 of 1999 (the most recent revaluation) or January 1 of 2002 (the year in which the tax assessment is being challenged).
¶ 23 The trial court held, as a matter of law, that the proper valuation date is January 1 of the year of the challenged value  here January 1, 2002. CP at 95. The trial court found that a valuation may be challenged midcycle if the plaintiff establishes by clear, cogent, and convincing evidence that the value of the property has declined. CP at 200.
¶ 24 I agree with the trial court that the proper date to determine the value of property is January 1 of the year of the challenged value despite the fact that this may occur in the middle of a county valuation cycle. The statutes at issue require this conclusion as do the general principles underlying Washington's tax system. Moreover, a decision to the contrary results in taxation that is so disproportionately high it exceeds constitutional limitations. Because the majority reaches a different result, I dissent.
¶ 25 Washington's property tax system is premised on the principle of "ad valorem"the tax is based on property value. Belas v. Kiga, 135 Wash.2d 913, 922, 959 P.2d 1037 (1998). Since before statehood, Washington has valued land for tax purposes at its fair cash market value with the intent of attaining a fair measure of certainty, uniformity, and equity. State ex rel. Morgan v. Kinnear, 80 Wash.2d 400, 400-01, 494 P.2d 1362 (1972). All property owners should pay the same tax rate based on the value of their property.
¶ 26 The statutes at issue here are RCW 84.36.005, RCW 84.40.020, and RCW 84.41.030. The plain language of these statutes establishes that the proper valuation date to determine the validity of a tax assessment is January 1 of the year of the challenged valuehere January 1, 2002.
¶ 27 In construing statutes, the court must ascertain and carry out the legislature's intent. Arborwood Idaho, L.L.C. v. City of Kennewick, 151 Wash.2d 359, 367, 89 P.3d 217 (2004). "If the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." Id.
¶ 28 RCW 84.36.005, titled "Property subject to taxation," provides:
All property now existing, or that is hereafter created or brought into this state, shall be subject to assessment and taxation for state, county, and other taxing district *301 purposes, upon equalized valuations thereof, fixed with reference thereto on the first day of January at twelve o'clock meridian in each year, excepting such as is exempted from taxation by law.
(Emphasis added.) In other words, real property is subject to assessment and taxation based on the value of the property on January 1 of each year. Note that the time of day is even specified, further supporting the conclusion this is mandatory.
¶ 29 RCW 84.40.020 also requires that property value be based on the value on January 1 each year. "All real property in this state subject to taxation shall be listed and assessed every year, with reference to its value on the first day of January of the year in which it is assessed." Id. (Emphasis added.) The assessment year commences on January 1 and ends on December 31 each year. RCW 84.04.040. Thus, when RCW 84.40.020 refers to the value on January 1 of "the year in which it is assessed," it means January 1 to December 31 every year. Therefore, real property must be listed and assessed each year based on its value as of January 1 of that same year.
¶ 30 RCW 84.41.030 is not in conflict with the above two statutes. RCW 84.41.030 requires county assessors to maintain programs of revaluation in which all taxable real property within the county is revalued at least once each four years and physically inspected at least once each six years. This cyclical valuation schedule was adopted by the legislature in 1955 in an effort to address the gross inequality and nonuniformity in valuation of real property. LAWS OF 1955, ch. 251, § 1. The cyclical system is an administrative procedure adopted to ensure taxpayers are treated equally. Note that this cyclical system generally benefits property owners because when property appreciates (as it normally does) owners benefit by the "stair step" evaluations that result.
¶ 31 Versions of RCW 84.36.005 and RCW 84.40.020 preexist the cyclical system authorized by RCW 84.41.030. See LAWS OF 1854, § 2, at 331; LAWS OF 1890, § 6, at 532.[2] They are instructive because even prior to the creation of cyclical valuations, taxation and assessment values were required to be based on values as of a specific date each yearjust as they are today. LAWS OF 1939, ch. 137, § 1; LAWS OF 1939, ch. 206, § 8. When the legislature created the cyclical system, it did not repeal former versions of RCW 84.36.005 and RCW 84.40.020, which is evidence that the legislature did not intend the cyclical system to replace yearly assessments. Instead, it noted that the "present statutes and practices . . . failed to achieve the measure of uniformity required by the Constitution." RCW 84.41.010. To solve this problem, the legislature enacted RCW 84.41.030requiring general revaluation of property throughout the state. RCW 84.41.030 did not change the assessment dateJanuary 1 each yearbut merely required counties to revalue properties systematically in order to achieve uniformity. Case law following the enactment of RCW 84.41.030 establishes that assessment remains vital to the taxation system. "Where taxes are levied on a valuation (or ad valorem) basis, an assessment is indispensable." Belas, 135 Wash.2d at 922, 959 P.2d 1037. "The goal has always been: real-estate taxes fairly assessed and uniformly applied." Morgan, 80 Wash.2d at 401, 494 P.2d 1362 (emphasis added).
¶ 32 The majority attempts to distinguish the terms "assessment" and "valuation." However, both terms refer to true and fair value. RCW 84.40.030 establishes that property is to be valued and assessed at one hundred percent of its true and fair value. RCW 84.40.030, captioned "Basis of valuation, assessment, appraisal  One hundred percent of true and fair value  . . ." provides: "All property shall be valued at one hundred percent of its true and fair value in money and assessed on the same basis unless specifically provided otherwise by law."[3] *302 (Emphasis added.); WAC 458-07-030. Thus, both assessment and valuation result in a determination of one hundred percent true and fair value.
¶ 33 RCW 84.36.005 and RCW 84.40.020 establish that assessments are to be based on the value of property as of January 1 each year, whereas chapter 84.41 RCW imposes procedural regularity on counties in their valuation and assessment methods. The use of cyclical systems of revaluation does not prevent taxpayers whose properties decline in value midcycle from seeking a refund based on that decline. In fact, forcing property owners to pay tax based on a property valuation that exceeds the value of the property is inconsistent with the statutory scheme and improper according to this state's general taxation principles and the Washington Constitution.
¶ 34 As noted above, Washington's property tax system is premised upon the value of real property. The goal of the system is to base tax on the value of the property in order to achieve a fair measure of certainty, uniformity, and equity. Failing to provide a remedy for property owners when property depreciates midcycle violates the principles on which the tax system is based; especially when one considers that most property owners are paying taxes on undervalued property midcycle.
¶ 35 Moreover, a taxing authority does not have the power to overtax people. The Washington Constitution limits the annual nonvoted property tax levy to one percent of market value. CONST. art. VII, § 2. "[T]he aggregate of all tax levies upon real and personal property by the state and all taxing districts . . . shall not in any year exceed one percent of the true and fair value of such property in money." Id. If a property is valued over one hundred percent of market value, the one percent tax will exceed the constitutionally allowed value. Thus, practically speaking, the majority's outcome allows the county to overtax a property owner in violation of constitutional limitations while providing the property owner with no recourse.
¶ 36 The majority also inaccurately reads article VII, section 2. The majority mistakenly believes the language "aggregate of all tax levies" refers to the aggregate of all properties within the taxing district. Majority at 299 n. 5. In fact, "aggregate of all tax levies" refers to the aggregate of all tax levies on a particular piece of property. The RCW supports this interpretationnot the majority's. RCW 84.52.010(1) provides "[i]f, as a result of the levies imposed . . . the combined rate of regular property tax levies that are subject to the one percent limitation exceeds one percent of the true and fair value of any property, then these levies shall be reduced as follows . . . ." (emphasis added).
¶ 37 The majority also mistakenly assumes that allowing a midcycle revaluation for depreciation in property value would violate the uniformity clause of the Washington Constitution. Article VII, section 1 provides in pertinent part: "All taxes shall be uniform upon the same class[4] of property. . . ." Allowing a midcycle revaluation when a taxpayer alleges overvaluation does not violate the uniformity requirement.
¶ 38 Washington courts have previously held that allowing midcycle revaluations did not violate the uniformity requirement. In Fifteen-O-One Fourth Avenue Ltd. Partnership v. Department of Revenue, 49 Wash. App. 300, 742 P.2d 747 (1987), the court held that the new construction statute (NCS)RCW 36.21.080[5]did not violate uniformity. The NCS allows county assessors to place newly constructed improvements to real property on the assessment rolls up to August 31 of each year and requires such improvements to be valued as of July 31 of that *303 year. The court held the NCS did not violate the uniformity clause. Id. at 301, 742 P.2d 747. The court explained that
[t]he NCS, like the revaluation plans the court has upheld, is an attempt to establish accurate fair market values. If property is improved by new construction, its value will presumably increase. By valuing new construction and construction in progress as of July 31, instead of the previous January 1, the assessor is able to include in the next year's taxes at least part of the value of improvements made each year. By contrast, if improvements made in 1985 were not valued until January 1 of 1986, the increased value would not be taxed until 1987. See RCW 84.09.010; RCW 84.56.020. In the interim, the improved property would be undervalued.
Id. at 306, 742 P.2d 747 (emphasis added).
¶ 39 It logically follows that if a taxing authority may revalue property when the property is improved midyear or midcycle to prevent undervaluation, the taxing authority may also revalue depreciated property midcycle when a taxpayer challenges the value to prevent any substantial overvaluation (the amount of overvaluation here being almost $200 million). Also noteworthy is the fact that the court recognized the general principle of taxation that taxes are to be based on fair market value.
¶ 40 Washington's tax system is based on property value and is intended to assure that all property owners pay a fair, i.e., equivalent rate. This principle, the plain language of the statutes at issue here, and the Washington Constitution all lead to the conclusion that the proper date to determine the value of property is January 1 of the year of the challenged valuehere January 1, 2002. The trial judge properly ruled, and the majority errs when it holds otherwise.
¶ 41 I dissent.
ALEXANDER, C.J., SANDERS and CHAMBERS, JJ., concur.
NOTES
[1] We previously granted ASiMI's motion to strike two appendices to the county's reply brief, leaving only the question of whether sanctions would be imposed against the county pursuant to RAP 10.7. We decline to impose sanctions.
[2] RCW 84.41.041 allows the valuation of property to be adjusted based on statistical data during the intervals between each physical inspection, but only requires an adjustment when properties are physically inspected less frequently than once every four years. As Grant County physically inspected properties once every four years, it was not required to update those valuations with statistical data.
[3] Article VII of our state constitution requires all taxes to "be uniform upon the same class of property within the territorial limits of the authority levying the tax." CONST. art. VII, § 1. To achieve uniformity in taxation, "[t]he legislature has set up an orderly system for revaluation" in chapter 84.41 RCW. Sator v. Dep't of Revenue, 89 Wash.2d 338, 344, 572 P.2d 1094 (1977). "This system, based on a rational view of the practical realities of budgets, public acceptance and basic fairness has been accepted by this court as a systematic and nondiscriminatory solution to the demands of" article VII, section 1. Id. In several cases we have upheld the cyclical revaluation statute against uniformity and equal protection challenges. See, e.g., id.; Dore v. Kinnear, 79 Wash.2d 755, 763, 489 P.2d 898 (1971); Carkonen v. Williams, 76 Wash.2d 617, 633, 458 P.2d 280 (1969).

We have repeatedly said that, if the 4-year revaluation program is conducted in an orderly manner and pursuant to a regular plan, and if it is not done in an arbitrary, capricious or intentionally discriminatory manner, then it does not violate the constitution nor does any incidental inequity which flows from it. A program is not invalid just because it is imperfect; minor discrepancies will be tolerated in an otherwise acceptable statewide system.
Sator, 89 Wash.2d at 344, 572 P.2d 1094.
[4] The dissent cites a ruling of the Court of Appeals claiming that a taxpayer's request for a midcycle revaluation would not violate the uniformity requirement. Dissent at 302 (citing Fifteen-O-One Fourth Ave. Ltd. P'ship v. Dep't of Revenue, 49 Wash.App. 300, 742 P.2d 747 (1987)). That case does not support the dissent's contention, however. The court held that a taxing authority does not violate the uniformity requirement by valuing new construction on a different cycle than other property because the value of new construction increases significantly during the year. It did not address whether a taxpayer may request a midcycle revaluation.
[5] Additionally, an assessed value that is higher than a property's midcycle fair market value does not violate article VII, section 2 of our state constitution, as claimed by the dissent. Dissent at 302. That provision requires that "the aggregate of all tax levies upon real and personal property by the state and all taxing districts now existing or hereafter created, shall not in any year exceed one percent of the true and fair value of such property in money." CONST. art. VII, § 2 (emphasis added). Taxpayers asserting a violation of this provision must show that the cumulative total of all tax levies within the taxing district exceeds one percent of the true and fair value of the total property within that district  evidence that a specific property is being taxed more than one percent of its true and fair value is insufficient. Id.; see also Belas, 135 Wash.2d at 922-23, 959 P.2d 1037 (under article VII, section 2 there is "no requirement that property be assessed at 100 percent of true and fair value. The validity of a particular tax levy is measured by whether aggregate levies exceed one percent of true and fair value and whether the taxpayer is being treated in accord with the uniformity requirement" of article VII, section 1); Sator, 89 Wash.2d at 343, 572 P.2d 1094.
[1] The county benefits from this cyclical system because it is administratively easier. Property owners generally benefit from this system because while their property appreciates they continue to pay taxes based on an old valuation.
[2] In 1890 the law provided: "All real property in this state, subject to taxation, shall be listed and assessed every even-numbered year, with reference to its value on the first day of April preceding the assessment." LAWS OF 1890, § 6, at 532.
[3] Likewise, RCW 84.40.040 provides that "[t]he assessor shall actually determine as nearly as practicable the true and fair value of each tract or lot of land listed for taxation . . . and shall enter one hundred percent of the true and fair value of such land . . . on the assessment list and tax roll."
[4] "All real estate shall constitute one class . . . ." CONST. art. VII, § 1.
[5] RCW 36.21.080 has been amended by LAWS OF 1989, ch. 246, § 4 and LAWS OF 1987, ch. 319, § 5 but it retains the substance at issue here.