KELLY L. SHAFER, *Appellant*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent*.

*Philip A. Talmadge* and *Sidney C. Tribe* (of *Talmadge Law Group, PLLC*) and *Corey L. Endres* (of *Vail, Cross-Euteneier & Associates*), for appellant.

*Robert M. McKenna, Attorney General,* and *Pat L. DeMarco* and *Dilek F. Aral-Still, Assistants,* for respondent.

¶1 ELLINGTON, J. — We must decide whether an order closing an industrial insurance claim becomes final where the order is based upon the opinion of a physician hired by the Department of Labor and Industries, and the closure is not communicated to the worker's attending physician. We hold that under the circumstances here, the order is not final.

## BACKGROUND

¶2 Kelly Shafer worked as a waitress at AMF Sports World. In October 1998, she heard her back "snap or crack"

as she lifted a keg of beer.[1] Her back pain increased during the following months, and her physician referred her to Dr. Elizabeth Cook, a physician certified in physical medicine and rehabilitation with a subspecialty in musculoskeletal problems, particularly spinal problems. Dr. Cook was "very certain" that Shafer's work accident caused her back pain.[2] Dr. Cook treated Shafer regularly from March 1999 through November 1999, and again in 2000. With Dr. Cook's assistance, Shafer filed a workers' compensation claim with the Department of Labor and Industries (Department). The Department approved the claim but authorized only some of the treatments recommended by Dr. Cook.

¶3 On behalf of the Department, Dr. Kenneth Briggs also examined Shafer. After his second examination, in July 2000, Dr. Briggs concluded that Shafer's condition was "fixed and stable," such that no further treatment was available that would improve her condition.[3]

¶4 Dr. Cook had received notice of other events in Shafer's claim and had filed reports on Shafer's behalf. She did not, however, receive a copy of Dr. Briggs' report, despite Department policy that all independent medical examination reports are sent automatically to the attending physician. When the Department asked Dr. Cook to evaluate Dr. Briggs' report, she replied that she had never seen it. She also informed the Department that she did not consider Shafer's condition fixed and stable. The Department still did not send her a copy of Dr. Briggs' report.

¶5 Two months later, on October 19, 2000, in reliance upon Dr. Briggs' report, the Department closed Shafer's claim. Shafer received a copy of the order, but Dr. Cook did not. Shafer did not request reconsideration or file an appeal with the Board of Industrial Insurance Appeals (BIIA). Dr. Cook later attested that had she been aware of the decision to close Shafer's claim, she would have requested reconsid-

---

[1] Report of Proceedings (RP) (Apr. 14, 2004) at 9.

[2] *Id.* at 66.

[3] RP (Apr. 29, 2004) at 23.

eration because she did not believe Shafer's condition was fixed and stable.

¶6 After the claim was closed, Shafer stopped seeing Dr. Cook because she could not afford the treatments. Two-and-one-half years later, in March 2003, she returned, complaining of worsening back pain. Based upon review of an MRI (magnetic resonance imaging), Dr. Cook recommended that Shafer apply to reopen her claim on the grounds that her condition had deteriorated after the claim was closed.

¶7 The Department denied the application, finding that Shafer's condition had not objectively worsened. Dr. Cook timely requested reconsideration. The Department affirmed. Shafer timely appealed. Proceedings before the BIIA stretched on for a year.

¶8 In a telephonic hearing before an industrial appeals judge in January 2004, Shafer contended that the October 2000 closing order never became final because Dr. Cook had not received a copy. The industrial appeals judge rejected that argument in an interlocutory order. Eventually the BIIA found that Schafer's condition had not objectively worsened after her claim was closed in October 2000.

¶9 Shafer appealed to superior court. She again contended that the closing order had never become final, but nothing in the record suggests any ruling was made. The case was tried to a jury, which found that the BIIA correctly decided that Shafer's condition had not objectively worsened.

¶10 Shafer appeals. She first contends that the order closing her claim was never final. She also argues that substantial evidence does not support the jury's finding on her petition to reopen the claim, and that the trial court abused its discretion when it ordered a CR 35 mental examination at the Department's behest.

## ANALYSIS

¶11 If the closing order never became final, that issue is dispositive. We therefore address it first.

¶12 The Department argues Shafer waived this argument by failing to raise it in her petition for review before the BIIA. Although the issue was argued in proceedings before the industrial appeals judge, the Department is correct that Shafer did not expressly raise it in her petition to the BIIA. RCW 51.52.104 requires that a petition for review "set forth in detail the grounds therefor and the party or parties filing the same shall be deemed to have waived all objections or irregularities not specifically set forth therein." Shafer's petition sought BIIA review of all interlocutory orders, but this is technically not enough to satisfy RCW 51.52.104. But neither did the Department timely object, as required by RAP 2.5(a), when Shafer raised the argument before the superior court.[4] The issue has been fully briefed by both parties, here and below. We elect to resolve it pursuant to our inherent power to address issues necessary to a proper decision.[5]

¶13 As a threshold matter, we disagree with the parties about the nature of the argument. Shafer contends that because Dr. Cook did not receive a copy of the closing order, it never became final and thus the BIIA lacked "jurisdiction" over her subsequent application to reopen the claim.[6] The Department responds that the fact Dr. Cook never received the closing order "is not a jurisdictional defect and does not relieve an injured worker of the [statutory] requirement [to file] a protest or appeal within 60 days of the worker's receipt of the Department order."[7]

¶14 Jurisdiction is not the issue here. "A tribunal lacks subject matter jurisdiction when it attempts to decide a type of controversy over which it has no authority to

---

[4] "The appellate court may refuse to review any claim of error which was not raised in the trial court." RAP 2.5(a).

[5] *Roberson v. Perez*, 156 Wn.2d 33, 39, 123 P.3d 844 (2005) (appellate court's refusal to review issues not raised below is discretionary); *Belnap v. Boeing Co.*, 64 Wn. App. 212, 223 n.6, 823 P.2d 528 (1992) (court elected to address issue crucial to case not raised in petition for review before BIIA).

[6] Br. of Appellant at 27.

[7] Br. of Resp't at 33.

adjudicate. '[T]he focus must be on the words "type of controversy." ' "[8] A determination to close a claim or to deny an application to reopen a claim falls squarely within the Department's authority to decide claims for workers' compensation[9] and the BIIA's authority to review Department actions.[10] The Department had jurisdiction over the claim, and the BIIA had jurisdiction to review its decisions.

¶15 This is properly a question of statutory interpretation. We must decide whether the legislature intended to require the Department to notify the claimant's attending physician before finally closing a claim.

¶16 In interpreting statutes, we first attempt to effectuate the plain meaning of the words used by the legislature.[11] We examine each provision in relation to other provisions and seek a consistent construction of the whole.[12] The Industrial Insurance Act, Title 51 RCW, is "liberally construed for the purpose of reducing to a minimum the suffering and economic loss arising from injuries and/or death occurring in the course of employment."[13] All doubts as to the meaning of the act are resolved in favor of the injured employee.[14]

¶17 RCW 51.52.050 sets forth the requirements for notice, finality, and appeal of Department orders:

Whenever the department has made any order, decision, or award, it shall promptly serve the worker, beneficiary, em-

---

[8] *Marley v. Dep't of Labor & Indus.*, 125 Wn.2d 533, 539, 886 P.2d 189 (1994) (alteration in original) (quoting Robert J. Martineau, *Subject Matter Jurisdiction as a New Issue on Appeal: Reining in an Unruly Horse*, 1988 B.Y.U. L. Rev. 1, 28).

[9] *See id.* at 540 (citing RCW 51.04.020; quoting *Abraham v. Dep't of Labor & Indus.*, 178 Wash. 160, 163, 34 P.2d 457 (1934)).

[10] RCW 51.52.050 ("Whenever the department has taken any action or made any decision relating to any phase of the administration of this title the worker, employer, or other person aggrieved thereby . . . may appeal to the board.").

[11] *Advanced Silicon Materials, LLC v. Grant County*, 156 Wn.2d 84, 89, 124 P.3d 294 (2005).

[12] *Id.*

[13] RCW 51.12.010.

[14] *Clauson v. Dep't of Labor & Indus.*, 130 Wn.2d 580, 584, 925 P.2d 624 (1996).

ployer, or other person affected thereby, with a copy thereof by mail . . . . [S]*uch final order, decision, or award shall become final within sixty days from the date the order is communicated to the parties* unless a written request for reconsideration is filed with the department of labor and industries, Olympia, or an appeal is filed with the board of industrial insurance appeals, Olympia . . . .

Whenever the department has taken any action or made any decision relating to any phase of the administration of this title the worker, beneficiary, employer, or other person aggrieved thereby may request reconsideration of the department, or may appeal to the board.[15]

An order is "communicated" upon receipt.[16] An order not communicated to a party does not become final, and the party is not subject to the 60-day limitation for requesting reconsideration or filing an appeal.[17]

¶18 Shafer contends that because Dr. Cook is a "person affected" by the closing order who should have received a copy of the order, and a "person aggrieved thereby" who had the right to appeal, Dr. Cook must also be a "party" to whom the order must be communicated before finality can ensue. The Department concedes Dr. Cook is a "person affected" and should have received a copy of the closing order. But the Department argues its failure to provide her with a copy had no effect upon finality, because the attending physician is not a party, and only parties must receive copies before an order becomes final.

¶19 Neither argument is fully persuasive. The legislature chose different terms for different sections of the statute, presumably for a reason, and meeting two designations does not necessarily mean the third is satisfied. It

---

[15] (Emphasis added.)

[16] *Rodriguez v. Dep't of Labor & Indus.*, 85 Wn.2d 949, 951, 540 P.2d 1359 (1975).

[17] *Haugen v. Dep't of Labor & Indus.*, 183 Wash. 398, 401, 48 P.2d 565 (1935); *see also In re Leibfried*, No. 88 2274 (Wash. Bd. of Indus. Ins. Appeals Dec. 7, 1990) (where claimant had not received order closing claim, application to reopen claim filed six months later should be construed as timely protest of decision to close claim).

is, however, suggestive of legislative intent. The Department's assertion that the physician is not a party begs the question of whether the legislature intended attending physicians to receive a copy of a claimant's closing order when the order is based on an independent medical examination before the order can become final—in which case, the legislature included the physician in the "party" category for that purpose.

¶20 Where a statute is ambiguous, we may look for guidance to related statutes and to the interpretation of the agency having expertise in the subject.[18] Those resources here are revealing.

¶21 RCW 51.28.020 imposes upon attending physicians an express duty to inform injured workers of their rights under the act and to assist them in applying for compensation.[19] Further, the statute expressly authorizes physicians to file applications on their patients' behalves.[20] Physicians are also required to submit treatment reports at the Department's request.[21]

¶22 Under the Department's implementing regulations, physicians are expected to request immediate reconsideration when they believe the Department has taken inappropriate action regarding the injured worker:

> On occasion, a claim may be closed prematurely or in error or other adjudication action may be taken, which may seem inappropriate to the doctor or injured worker. When this occurs the attending doctor *should submit immediately in writing his request for reconsideration* of the adjudication action . . . .

---

[18] *Dep't of Ecology v. Theodoratus*, 135 Wn.2d 582, 589, 957 P.2d 1241 (1998) (administering agency's interpretation of statutes entitled to "great weight" if the statues are ambiguous).

[19] "The physician . . . shall inform the injured worker of his or her rights under this title and lend all necessary assistance in making this application for compensation and such proof of other matters as required by the rules of the department without charge to the worker." RCW 51.28.020(1)(b).

[20] RCW 51.28.020(2)(a) ("If the application required by this section is . . . [f]iled on behalf of the worker by the physician, . . . the physician . . . may transmit the application to the department electronically using facsimile mail.").

[21] RCW 51.36.060.

. . . .

All requests for reconsideration must be received by the department or self-insurer within sixty days from date of the order and notice of closure. Request for reconsideration of other department or self-insurer orders or actions must be made in writing by *either the doctor* or the injured worker within sixty days of the date of the action or order.[22]

Likewise, the Department's *Attending Doctor's Handbook*, citing RCW 51.52.050, instructs physicians, "[i]f you or your patient disagree with a decision . . . , *you* have the right to protest or appeal within 60 days of the date *you receive* notification of the department's decision."[23]

¶23 Thus, according to the Department, the attending physician is authorized (and indeed urged) to take steps on behalf of the injured worker that normally are available only to a claimant.

¶24 In its brief, the Department does not address the regulations or the handbook. Rather, it encourages us to follow the analyses of *Wells v. Western Washington Growth Management Hearings Board*[24] and *Simmerly v. McKee*.[25] The *Wells* court held that under the Administrative Procedure Act (APA), chapter 34.05 RCW, an agency's failure to serve its final order on all parties to a multiparty appeal did not relieve parties who did receive the order from the 30-day deadline for appeal.[26] The *Simmerly* court held that under the Mandatory Arbitration Rules (MAR), the time period for an individual party to request a trial de novo commences when the arbitrator perfects filing of the

---

[22] WAC 296-20-09701 (emphasis added).

[23] Wash. State Dep't of Labor and Indus., Attending Doctor's Handbook 30 (2005) (emphasis added).

[24] 100 Wn. App. 657, 997 P.2d 405 (2000).

[25] 120 Wn. App. 217, 84 P.3d 919 (2004).

[26] *Wells*, 100 Wn. App. at 678.

award with respect to that party, not when filing is perfected with respect to all parties.[27]

¶25 But these cases are not helpful. They interpret the APA and the MAR, schemes entirely distinct from the Industrial Insurance Act that do not contemplate that a nonlitigant will have a right or duty to appeal on behalf of another. Further, in each case the court relied upon procedural safeguards ensuring that no party would be prejudiced by late receipt of the final order.[28] Assuming the physician is a party, the same safeguards are not present here.

¶26 Rather, we are guided by the statute and regulations. In the Industrial Insurance Act, the legislature has carved out roles and rights for nonlitigants. The legislature expects the attending physician to serve as a medical advocate for the injured worker and as a fulcrum in the agency's evaluation of the claim. The Department implements this expectation by advising physicians they have the right and are expected to seek review on their patients' behalf. The physician cannot decide whether to appeal unless the physician knows of the order. Failure to ensure that the physician learns of the order therefore deprives both the worker and the agency of the voice of the physician, just at the critical point of finalizing a determination of the worker's future medical condition.

¶27 We conclude that when a final order, decision, or award is based upon a medical determination, the legislature considers the attending physician to be an interested party.[29] In such cases, the order does not become final until 60 days after the doctor has received it.

¶28 The October 19, 2000 order closing Shafer's claim never became final. A request for reconsideration or appeal, by Shafer or Dr. Cook, is still timely.

---

[27] *Simmerly*, 120 Wn. App. at 222-23.

[28] *Id.* at 222; *Wells*, 100 Wn. App. at 678-79.

[29] We confine our holding to those orders based upon an assessment of the worker's medical condition. We do not address whether the physician is a party for purposes of other types of orders.

¶29 Given our disposition, we need not reach Shafer's other assignments of error. Her request for attorney fees must abide remand.[30]

¶30 Reversed and remanded.

GROSSE and BECKER, JJ., concur.

Reconsideration granted in part and opinion modified September 4, 2007; reconsideration denied December 18, 2007.

Review granted at 163 Wn.2d 1052 (2008).

---

[30] RCW 51.52.130; *Flanigan v. Dep't of Labor & Indus.*, 123 Wn.2d 418, 427, 869 P.2d 14 (1994).